In the matter of the application of The Essex County Park Commission for leave to pay into court condemnation money awarded to Philip J. Bowers.

[Decided April 18th, 1912.].

1. *P. L. 1903 p. 392 § 1* provides that all assessments for improvements upon lands in towns incorporated under the act shall be payable in ten annual installments; the first at or before the expiration of one month from confirmation of the assessment, and thereafter at the expiration of each year from such confirmation, one installment shall be payable

1

with interest from the date of confirmation, provided that the owner may pay the whole or any balance of the installments at one time.—*Held,* that the assessments became liens at the time of confirmation of the assessments rather than at the date fixed for payment thereof.

2. Eminent Domain act (*P. L. 1900 p. 80 § 3*) entitles owners and persons interested in lands to be condemned to notice of the proceedings, and requires a notice of *lis pendens* to be recorded in the clerk's office, in default whereof persons acquiring an interest in the property pending the proceedings will not be bound thereby. Section 6 requires the assessment of the amount to be paid by the condemning party to be made "as of the date of filing the petition and order thereon." Section 7 provides that, upon filing of the commissioners' report "and upon payment or tender of the amount awarded, the petitioner may enter and take possession of the land." Section 14 provides that, if possession be not taken before the finding by the jury, petitioner, upon payment as aforesaid or payment into court of the amount found due, may take possession. The constitution provides that private property shall not be taken for public use without just compensation. Laws, April 2d, 1906 (*P. L. 1906 p. 99*), amending the Eminent Domain act, permits the proceedings to be abandoned within twenty days after filing the award or within twenty days after rendition of verdict.—*Held,* that until payment or tender of compensation, the title to the condemned land, as between the owner and others than petitioner, remains in the owner, the land not being taken as of the date of the filing of the petition in the condemnation proceedings, and hence may be the subject of voluntary or involuntary liens against it.

3. *P. L. 1908 p. 524 § 41* provides for a report by the board of assessments as to assessments for benefits for public improvements by a city, showing the land benefited, amount assessed, and for confirmation of the report by the city council after hearing, and that after such confirmation the report and map, with a copy of the resolution confirming it, shall be delivered to the collector of taxes, "and the assessments so levied upon the lands specially benefited shall thereupon be due and payable and shall become liens upon the lands assessed as hereinafter provided." The section further directs that the assessment shall be payable in ten equal installments, the first of which shall be payable thirty days after the confirmation of the assessment, and the others in one to nine years, respectively, after confirmation, and that each installment of such assessment shall be a first lien upon the land assessed from the date that the installment is due and payable as herein provided, and shall remain a lien until paid, notwithstanding any alienation thereof.—*Held,* that the statutes gave the city a right to a lien upon the lands assessed for the whole assessment from the time of the delivery of the report to the collector of taxes, the lien to arise in the future for each of the ten assessments at fixed intervals, and, since the right to future liens arising pending proceedings to condemn the land was cut off by payment of the money to the owner, it would be transferred to the money received by him.

On application of P. J. Bowers for payment. Heard on petition and answers, affidavits and stipulations.

*Mr. Ralph E. Lum, Messrs. Lum, Tamblyn & Colyer,* solicitors, for the petitioner.

*Mr. Charles F. Kocher,* for the town of Bloomfield.

*Mr. Borden S. Whiting,* for the city of East Orange.

EMERY, V. C.

The Essex Park Commission by a petition filed on December 5th, 1910, under the Eminent Domain act of 1900, and its supplements, took by condemnation lands of Philip J. Bowers in Essex county located partly in the town of Bloomfield and partly in the city of East Orange.

The lands taken bounded on a street called Cleveland Terrace, and previous to the filing of the park commission's petition for condemnation, the town of Bloomfield had, on Bowers' application, opened this street through his lands within its limits, and had also on like application, constructed a sewer therein, and laid down telford pavement and constructed curbing and gutters thereon. The city of East Orange had also previous to the filing of the petition for condemnation, improved the street by grading, paving, guttering and curbing within its limits. Subsequent to the filing of the petition, assessments for benefits were made against the lands of Bowers, the assessment of $2,431.75 for the improvement in East Orange being confirmed by the city council on February 14th, 1911, and the several assessments for the Bloomfield improvements at later dates, viz., May 15th, 1911, for street opening, $55.87; sewer, $207.36; curbing and guttering, $318.72; altogether, $581.95; and on June 7th, 1911, for telford pavement, $607.49. On May 4th, 1911, after the confirmation of the East Orange assessment, but before the confirmation of any of the Bloomfield assessments, the award of the commissioners in the condemnation proceedings was filed awarding to Bowers $23,264 for his land taken and damages. Bowers appealed from the award and was awarded by a jury on October 23d, 1911, the sum of $28,000 for land taken and damages. The park commission made no payment or tender of the money to Bowers, but on November

14th, more than twenty days after the verdict of the jury, applied to this court for leave to pay the amount of the award into court, and after notice to Bowers and the municipalities an order was made directing payment into court of the sum of $6,000, sufficient to meet the alleged liens, and the balance to be paid to Bowers. Bowers now applies for the payment to himself of the entire amount paid into court, claiming that the assessments are not liens upon or chargeable against the fund.

Independent of the effect of the condemnation proceedings the Bloomfield assessments became statutory liens on the property assessed on their confirmation by the town council. The statute relating to assessments in towns (*P. L. 1903 p. 392 § 1*), which makes them liens, is to be construed as fixing the time of confirmation rather than the date fixed for payment of the assessment, as the date when they became liens.

For present purposes, the rights of Bloomfield if accruing on the latter dates are as effective as if they accrued on May 15th, 1911, the date of confirmation, inasmuch as both dates are subsequent to the award. The extent to which the statute relating to cities (*P. L. 1908 pp. 523, 525 § 41*) gives the city of East Orange a lien for assessments and the time when the lien arises is not so clear, and this question will be separately considered. For the present, I assume that the assessment (or at least the first one-tenth installment thereof) became due and was a lien before the filing of the award of the commissioners, May 4th, 1911.

The question in the case, on the above facts and assumptions, relates to the right under the Eminent Domain act, of persons acquiring liens on the lands condemned or interests therein pending the condemnation proceedings, to claim payment of the liens out of the purchase-money. By the Eminent Domain act (*P. L. 1900 p. 80 § 3*) owners, occupants and persons interested in the lands are entitled to notice of the proceedings for condemnation, and a notice of *lis pendens* naming the parties interested and describing the land is to be recorded in the clerk's office of the county, "in default whereof, persons acquiring an interest in the property pending the proceedings shall not be bound thereby." Such notice was filed in this case, and the munici-

palities not having yet acquired a statutory lien on the lands, or interest therein, at the time of filing the petition, were not named as parties to the proceedings.

It is claimed on behalf of Bowers, that under the Eminent Domain act, his lands were "taken" as of the date of filing the petition, that his title to the lands was, upon the completion of the condemnation proceedings, divested as of that date, and that his right to the money, although it was not paid until the completion of the proceedings, took effect as of date of the petition, and therefore his lands never became subject to the liens, and he is entitled to the compensation paid for them without payment of the assessments. The claim is based on the provision in the sixth section of the Eminent Domain act, which requires the assessment of the amount to be paid by the condemning party for land and damages, to be made "as of the date of filing the petition and order thereon." It is contended that this provision has also the effect as between the owner and those claiming under him, after the filing of the petition, of effecting the transfer of title to the land as made at the same time. But the subsequent provisions of the act indicate that the land is not to be considered as "taken" from the owner so as to deprive him of the ordinary rights and obligations of an owner of the property, until payment or tender of the award or verdict for damages. Section 7 provides that upon the filing of the commissioners' report and upon payment or tender of the amount awarded, the petitioner may enter and take possession of the land, and section 14 provides that

"if possession shall not have been taken before the finding by the jury, then the petitioner, upon payment as aforesaid, or payment into the court of chancery of the amount found due by the jury, may enter upon and take possession of the lands."

These statutory conditions requiring payment as the condition precedent to "taking" assure the benefit of the constitutional provision that "private property shall not be taken for public use without just compensation." It may happen in some instances that the rule of evidence prescribed by the statute as to the time of the valuation may not give the owner

his full constitutional rights and may perhaps not be the proper method of assessing his damages. Previous to this special statutory rule fixing damages as of the date of the petition, the value of the premises taken was assessed in the law courts as of the date of the award of commissioners. *Trimmer* v. *Railroad Company, 55 N. J. Law (26 Vr.) 46,* and in equity courts as of the date of the entry (*Doremus* v. *Paterson* (*Vice-Chancellor Stevens, 1907*), *73 N. J. Eq. (3 Buch.) 474, 501*). But this consideration as to the rule of evidence relating to damages and values is aside from the present inquiry, which relates only to the time when as between the owner and persons other than the petitioner, claiming under the owner *pendente lite,* either voluntarily or involuntarily, his right and title to the lands as lands has terminated.

By requiring notice of the petition to be given to all parties interested and the *lis pendens* to be filed and the further provision that on failure to file *lis pendens,* persons acquiring an interest in the property pending the proceedings shall not be bound thereby, this proceeding is assimilated to the ordinary formal suit relating to lands, and pending the proceedings, the rights of the owner in the lands continue, subject to his voluntary disposition by deed or mortgage, disposition by law on his death, testate or intestate, and also to involuntary proceedings such as judgments, attachments and the like. Taxes and assessments for municipal proceedings becoming liens on the land pending the proceedings, stand in the same situation. *In re Sleeper* (*Vice-Chancellor Pilney, 1901*), *62 N. J. Eq. (17 Dick.) 67.* It appears by the record in this case that taxes assessed after the petition were directed to be paid as well as those assessed previously.

The condemnation proceedings, so far as relates to divesting title between the owner and persons other than the condemning party, are pending until the actual payment or tender of the compensation, and, as between them, his rights as owner of the lands continue up to the time when he becomes the owner of the money paid for them. This construction, or rather this application, of the effect of the act establishing judicial proceedings for condemnation, with formal parties and *lis pendens* notices, gives the

FEBRUARY TERM, 1912.    7

10 Buch.       In re Essex County Park Commission.

same effect as between the owner and others than the petitioner, as is given in pending suits of other kinds, and leaves the owner still clothed with full property rights, subject only to the rights of the petitioner or suitor.  And a further special reason exists for not depriving the owner pending the proceedings of such property right in the lands or freeing him from obligations to others. This reason is that under the Eminent Domain act the condemning party is not bound when the award is made to continue the proceedings and take the land, but under a supplement of April 2d, 1906 (*P. L. 1906 p. 99*), may abandon the proceedings at any time within twenty days after the filing of the award, or if the issue shall be tried by a jury, within twenty days after rendering of the verdict, upon payment of the costs and expenses.  If on the filing of the petition the owner's title to the lands is divested by the statute, as is now claimed by the owner, then he can no longer convey, mortgage or devise the lands pending the proceedings, and upon any abandonment, the title must be revested in him. In the *interim* the title, as all title must vest somewhere, must be considered as in the condemning party, without payment.  It would be an anomalous condition of title if, pending the proceedings, the owner could not convey, mortgage or devise the lands, and if, pending the proceedings, no judgment recovered against him bound his interest in the lands.  The more logical as well as practical construction of the effect of the act upon the owner's title to the lands is, that pending the proceedings, and up to the time of payment or tender, his title to the lands continues as between himself and others than the petitioner and is subject to liens, voluntary or involuntary, against him.  The title being in the present instance divested by payment into court, the liens attach to the money in court.  The Bloomfield assessments being under the statute liens on the land before payment of the money should be paid out of the fund.

*Second, the East Orange assessment.*

The "Act concerning cities" (*P. L. 1908 ch. 250 pp. 486, &c.*), under which the East Orange assessments were made, provides, section 41 (at *p. 524*), for a report by the board of assessments of the assessment for benefits, showing the lands benefited and the amount assessed as benefits, a confirmation of the report by

the city council after a hearing thereon, and then provides that after such confirmation the report and map, with a copy of the resolution confirming the same, certified by the city clerk, shall be delivered to the collector of taxes, "and the assessments so levied upon the lands specially benefited shall thereupon be due and payable and shall become liens upon the lands assessed as hereinafter provided." These were delivered to the collector on February 15th, 1911, as appears by the amended answer of the city and stipulation of the parties. The subsequent provision thus referred to is the same section (*p. 525*), and directs that such assessment shall be payable in ten equal installments, the first of which shall be due and payable at or before the expiration of thirty days after the confirmation of the assessments, and the others, respectively, in one, two, three, four, five, six, seven, eight and nine years after the date of such confirmation, with further provisions relating to interest on the installments paid or unpaid. Then follows the provision as to the lien of the assessments:

"Each installment of such assessment with the interest shall be a first lien upon the land assessed from and after the date when such installment of the assessment is due and payable as herein provided, and shall remain a first lien thereon until paid, notwithstanding any devise, descent, alienation, mortgage or other incumbrance thereof, and shall be enforced and collected by sale of the land, as in case of taxes," &c.

Reading together these two clauses of this forty-first section relating to assessments, their effect is to give to the city, from the time of the delivery of the report, &c., to the collector, and thereupon, that is, at once, a right to a lien upon the lands assessed for the whole assessment, the lien to arise in the future for each one-tenth of the assessment and interest, at fixed intervals. These future liens, moreover, are to be first liens from and after the dates fixed for the payments of the several installments unaffected by any devise, alienation, &c. This includes, I think, devises, alienations, &c., after the delivery to the collector and previous to the time fixed for the lien to arise as well as subsequent to this time. From the time of delivery to the collector, this right of the city to future liens on the lands is a right to an interest in the lands. This right in its inception may not be an existing lien on the lands, in the technical sense of the word "lien," or within the

meaning of a covenant against "liens" between grantor and grantee, but it is from its inception a right or interest in the lands in the nature of an encumbrance thereon. It is at once a subsisting right or encumbrance just as an inchoate estate in dower is held to be an encumbrance before the dower interest becomes consummated. *Carter* v. *Denman* (*Supreme Court, 1852*), *23 N. J. Law* (*3 Zab.*) *260, 273.* This construction of the clauses of the section relating to the assessments gives full effect to all the provisions of both clauses and by a natural meaning and construction of the words used, and seems to be the only construction giving any effect to the part of the first clause, which, after directing the delivery of the report to the collector, provides that the assessment so levied shall "thereupon * * * become liens upon the lands assessed as hereinafter provided."

On this ground it seems to me to be the construction which should be adopted, although it creates a right or interest relating to liens for assessments which differs from the usual statutory provisions. It is within the power of the legislature to create such right, and the only question is whether the statute does this. I conclude that it does.

This right to future liens on the land existing in the city from the time of the delivery of the report to the collector, arose pending the condemnation proceedings, and was therefore subject thereto and was cut off and destroyed when the condemnation was perfected by the payment of the money. And the right or interest of the city in the lands being thus cut off, its rights in the land existing at the time the title was divested, are transferred to the compensation money which is paid for the fee-simple estate, including all interests, and the city is entitled to be paid therefrom.