(159 App. Div. 86.)

## GA NUN v. PALMER.

(Supreme Court, Appellate Division, Second Department.   November 14, 1913.)

1. CONTRACTS (§ 229*)—CONSTRUCTION—CONTRACT FOR SUPPORT.
> Under an instrument signed and delivered to plaintiff by one living with her, providing that the plaintiff should care for the maker "so long as she lives," and that the maker would pay plaintiff $70 a month for the support of the house, and that at her death plaintiff should have $20,000 to be found at a safe deposit company, that plaintiff should take keys and distribute the packages in the box as they were marked, and that all the clothing, silver, and everything in the house should be plaintiff's, the contractual part of the instrument was limited to plaintiff's obligation to care for the maker as long as she lived, and to the maker's obligation to pay her $70 a month therefor.
>
> [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1045–1057, 1059–1066, 1070, 1077; Dec. Dig. § 229.*]

2. WILLS (§ 88*)—VALIDITY—"TESTAMENTARY DISPOSITION."
> Such instrument, except as to the provision for support during the maker's life and for payment therefor, was a "testamentary disposition," which is the legal declaration of a man's intentions of what he wills to be performed after his death, and which includes any writing, however informal in expressing such intention, which, if executed in accordance with the statutory requirements, becomes a good testamentary disposition.
>
> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*
>
> For other definitions, see Words and Phrases, vol. 8, p. 6931.]

3. WILLS (§§ 753, 768*)—CONSTRUCTION—"SPECIFIC LEGACY."
> A testamentary disposition of $20,000, to be found in a safe deposit company, was a gift in the nature of a "specific legacy," which is "a bequest of a specified part of a testator's personal estate, distinguished from all others of the same kind," and where the subject-matter was not in existence at the testator's death, the gift failed.
>
> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944, 1990; Dec. Dig. §§ 753, 768.*
>
> For other definitions, see Words and Phrases, vol. 7, pp. 6600–6604; vol. 8, p. 7803.]

4. EVIDENCE (§ 265*)—ADMISSIONS—FAILURE TO TESTIFY.
> In a civil action, the plaintiff is entitled to whatever inference may fairly be drawn from defendant's failure to deny the making of admissions put in evidence by plaintiff.
>
> [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

Appeal from Special Term, Westchester County.

Action by Mary F. Ga Nun against Mary E. Palmer, individually and as executrix, etc., of Jane M. Sands, deceased.   From a judgment in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

favor of the plaintiff, defendant individually and as executrix, etc., appeals. Reversed, with direction to dismiss the complaint.

See, also, 148 App. Div. 924, 132 N. Y. Supp. 1129.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

George H. Taylor, Jr., of New York City (George H. Hyde, of New York City, on the brief), for appellant.

Charles Thaddeus Terry, of New York City (Curtis Calvin Cooper, of New York City, on the brief), for respondent.

BURR, J. On November 23, 1899, Jane M. Sands, then past 70 years of age, signed a paper writing and delivered the same to Mary F. Ga Nun, the plaintiff in this action. It was in the form following:

"I, Mary F. Ga Nun, do promise to care for Jane M. Sands, in sickness and health so long as she lives. I, Jane M. Sands, do promise to pay Mary F. Ga Nun $70 a month for the support of the house and her clothes as long as I live, and at my death she is to have $20,000 that she will find in the safe deposit in New York and she is to take my keys and distribute the packages in the box as they are marked, and all my clothing and wearing apparel and silver (in short) everything in the house shall be Mary F. Ga Nun's."

From that date for a period of about six months, and until May 1, 1900, plaintiff did care for Miss Sands, and was able and willing to continue so to do. Notwithstanding this, on the latter date, Miss Sands left plaintiff's house and went to reside with defendant until her death, which occurred on the 16th of August, 1906. At the time of the making of said instrument, and for some time prior thereto, Miss Sands had a box in the New York Safe Deposit Company. On November 20, 1900, she relinquished it, and there is no evidence that thereafter she ever secured a box elsewhere. Neither is there any evidence as to its contents, either at the date of the signing of the instrument or at the date of its surrender; but at the time of her death Miss Sands did not have $20,000 or any other property in any "safe deposit in New York," or elsewhere, nor any box in any safe deposit company. Prior to her death she had conveyed away all of her property except a trifling amount, not exceeding in value about $100.

Plaintiff asserts that the instrument above referred to constitutes an absolute agreement upon the part of the maker to pay her the sum of $20,000 upon her death, in consideration of care to be furnished to her. Asserting that she is a creditor of her estate to that extent, she brings this action in behalf of herself and all other creditors of said Jane M. Sands against defendant, in her capacity as executrix of her will and also individually: First, to establish the indebtedness of said estate to her; and, second, to set aside certain conveyances of personal property alleged to have been made by Jane M. Sands to said defendant in fraud of creditors, and to impress a trust upon certain real property alleged to have been purchased by defendant with the proceeds of personal property thus fraudulently secured. The learned court at Special Term has found that plaintiff is a creditor of the estate of Jane M. Sands to the extent of $20,000, with interest thereon from August 16, 1906, and that she is entitled to judgment setting

aside certain conveyances of personal property and impressing a trust upon the real estate.

Upon a previous trial of this action the learned court at Special Term held that plaintiff's cause of action was barred by the statute of limitations. Upon an appeal to the Court of Appeals from a decision of this court affirming the judgment entered thereon, it was reversed, and the court held that, assuming there was a contract for the breach of which money damages might be recovered, the statute did not begin to run until the date of Miss Sands' death. Ga Nun v. Palmer, 202 N. Y. 483, 96 N. E. 99, 36 L. R. A. (N. S.) 922. None of the other issues involved therein were then tried out or decided, and the learned court was careful to say that it left undetermined whether this instrument, so far as the payment of $20,000 was concerned, contained an absolute promise to pay a specified sum for a valuable consideration upon the death of Miss Sands, or whether it was testamentary in character and in the nature of a specific legacy. The learned counsel for respondent contends that upon the previous appeal the Court of Appeals must have held that this portion of the instrument was contractual, since otherwise it would have affirmed the judgment dismissing plaintiff's complaint. We do not so construe the decision, and deem ourselves warned by the language of the opinion that the court considered this question an open one. We must therefore at the threshold of this case determine it, for if plaintiff is not a creditor, she cannot maintain this action. Personal Property Law, Consol. Laws 1909, c. 41 (Laws 1909, c. 45) § 19; Real Property Law, Consol. Laws 1909, c. 50 (Laws 1909, c. 52) § 268.

[1, 2] We think that the contractual part of the instrument under consideration was limited to an obligation upon the part of plaintiff to care for Miss Sands "in sickness and health" as long as she lived, and to an obligation upon the part of the latter to pay her $70 a month therefor, and that the remaining provisions of said instrument are testamentary in character. Whether it is sufficient as a will, if the property had still remained in the safe deposit box, it is not now essential to determine. The important question is as to the nature of this clause of the instrument, whether this sum was to be paid for the care "in sickness and health" which plaintiff was to give to decedent, or whether this was already provided for by the preceding clauses of the same instrument, and this provision for the payment of $20,000 was in the nature of a gift, the promise to make which may have been induced by the hope and expectation that the promisor would receive such care, but which formed no part of the consideration therefor. That has been termed a "testamentary disposition" which is contained in "an instrument by which a person makes a disposition of his property to take effect after death." Jarman on Wills, 11. And again, it is "the legal declaration of a man's intentions of what he wills to be performed after his death." Langdon v. Astor's Executors, 16 N. Y. 9, on page 49; Hubbard v. Hubbard, 12 Barb. 148, on page 153. Any writing, however informal it may be, with the expressed intent of giving a posthumous destination to the maker's property, is testamentary in character, and if executed in accordance with the statutory require-

ments, will be a good testamentary disposition. Robinson v. Brewster, 140 Ill. 649, 30 N. E. 683, 33 Am. St. Rep. 265; Olney v. Howe, 89 Ill. 556, 31 Am. Rep. 105; Cover v. Stem, 67 Md. 449, 10 Atl. 231, 1 Am. St. Rep. 406; Coulter v. Shelmadine, 204 Pa. 120, 53 Atl. 638. In Robinson v. Brewster, supra, a paper which was in form an assignment of all the maker's property was held to be of such a nature. In Cover v. Stem, supra, the direction was "at my death, my estate or my executor pay to July Ann Cover three thousand dollars." In Coulter v. Shelmadine, supra:

"For value received I hereby will and assign all my right, title, interest and claim to the land described in the within deed to Diana McGahey, * * * provided this assignment shall not be of any effect until after my death."

In each of these cases the court held that the character of the disposition was testamentary and not contractual, although in each instance, because not executed in compliance with the statutory requirements respecting a will, the attempted disposition failed.

Treating the clause beginning with the words "and at my death" separate and distinct from that which precedes, it would seem clear that such is the character of this disposition. The preceding words, taken in connection with the established facts in the case, tend to strengthen rather than detract from this impression. For six months, namely, from the 1st of November until the 1st of May, the sum of $25 a month was paid as rent for the apartment where plaintiff and decedent resided. It also appeared that previous to going to live with plaintiff, Miss Sands paid $6 a week for her board, and that she paid a similar amount for a short time after she went to reside with defendant. As one of the witnesses called by plaintiff testified:

"Miss Sands' remark about board was that she always paid $6 a week wherever she went, because she did not want to be under obligations to anybody."

The sum of $70 a month, therefore, would be ample to provide for her board, for the rent of the apartment, and still leave something for other purposes. The practical construction put upon the instrument by both parties sustains this view. After Miss Sands had left plaintiff and had gone to reside with defendant, plaintiff presented a bill for services up to the time when she left (May 1, 1900). For the first month, which was before the date of the agreement, plaintiff charged $50. After that her claim was at the rate of $70 a month under the agreement, and the balance remaining after crediting Miss Sands with payments made, and which amounted to $153, was, after some negotiations and correspondence in June, 1900, paid to and accepted by plaintiff. Again, as testified to by plaintiff's witnesses, in speaking of the instrument in question on several occasions, Miss Sands said that a will could be broken, but a contract never. And again, that she had been advised by her lawyer that:

"As long as you live, Miss Sands, you can control your money and give it all away, but at your death whatever is left this contract will cover."

It is true that in speaking of this instrument, as to the contents of which Miss Sands seemed to have been ignorant until a copy thereof

was sent to her a short time before the settlement above referred to, and after she had ceased to reside with plaintiff, both she, and on other occasions the defendant also, speaking of the instrument as a whole, referred to it as a contract. Mistaken terminology cannot establish legal rights. Color is further lent to the theory that this disposition of $20,000 was testamentary in character by the fact that, as part of the same clause of the same instrument, plaintiff was made the agent of Miss Sands after her death to deliver a portion of her property to others, which clearly is in the nature of a posthumous disposition thereof. Finally, the provision that "all my clothing and wearing apparel and silver (in short) everything in the house shall be Mary F. Ga Nun's," must be construed as relating to a condition of affairs existing at the death of Miss Sands, and not prior thereto. If some of the clothing in existence when the instrument was made had been worn out in the interval between the date thereof and Miss Sands' death, could plaintiff insist that the value thereof should be made good to her? We think not.

[3] If this clause of the contract is testamentary in character, then it seems clear that the gift of $20,000 was in the nature of the gift of a specific legacy; and, there being no such amount in any safe deposit vault in New York at the time of Miss Sands' death, the gift fails. A specific legacy has been defined to be "a bequest of a specified part of a testator's personal estate distinguished from all others of the same kind." Crawford v. McCarthy, 159 N. Y. 514, 54 N. E. 277; Dauel v. Arnold, 201 Ill. 570, on page 579, 66 N. E. 846; Roquet v. Eldridge, 118 Ind. 147, 20 N. E. 733; Holt v. Libby, 80 Me. 329, 14 Atl. 201. Where the subject-matter of a specific testamentary gift is not in existence at the time of testator's death, the gift fails. Crawford v. McCarthy, supra. It follows, then, that the judgment entered in this case must be reversed.

It may not be amiss, however, to remark in conclusion that, even if the action would lie, it is doubtful if the evidence sustains the findings of resulting insolvency from such conveyances as were made to defendant, or that such conveyances were entirely voluntary. It does appear that within a short time after Miss Sands went to live with defendant she ceased to pay board, and that thereafter defendant did provide and care for her for nearly or quite six years; that during the later months of her life she provided her with a nurse, which her condition then made necessary, and that defendant herself paid the funeral expenses, exceeding in amount the sum of $500, although it is admitted that she did receive funds from Miss Sands to enable her to make the payments last referred to. Neither is there any evidence that by reason of the transfers which the learned court at Special Term has found were made to defendant, if the evidence sustained such findings, Miss Sands thereby became insolvent. We fail to discover any evidence as to the amount or value of Miss Sands' property at the time when the promise to give plaintiff $20,000 was made, if such promise could be deemed an absolute one, and contractual in character. In his brief the learned counsel for the respondent contends that at the time of the execution of this agreement Miss Sands was worth in the neighborhood of

$60,000, although it is difficult to see upon what evidence in this case he bases such contention. If that is so, the transfers to defendant, assuming all of them to have been made without consideration, did not of themselves render Miss Sands insolvent. The fact that at the time of her death she possessed no property at the most would only justify the conclusion that, by reason of conveyances to others than defendant, such result had been produced.

[4] The affirmative evidence with regard to the use of any portion of property which originally belonged to Miss Sands in the purchase of the Mt. Vernon property depends entirely upon the testimony of two persons who were employed as detectives, and consists of an admission alleged to have been made by defendant to them, which, in the first instance, was not brought out on direct examination. It is true that defendant did not take the stand and deny the making of these admissions, and in a civil action whatever inference is justly to be drawn from that plaintiff is entitled to. None the less, the evidence is weak and unsatisfactory.

Where, as it appears in this case, plaintiff has been fully compensated for all of the services which she actually rendered, a court of equity should not feel called upon, by a strained construction of an instrument in the handwriting of the person claiming benefits under it, or by a strained construction of the evidence, to award the plaintiff the sum of $20,000 for no services whatsoever.

The judgment appealed from should be reversed, upon questions of fact as well as of law; and, as the action cannot be maintained, judgment should be directed dismissing the complaint, with costs.