KATHARINE L. TIPPLE, Respondent, *v.* WILLIAM S. TIPPLE, Appellant.

Third Department, September 10, 1919.

Contract — master and servant — action to recover for services rendered in household — recovery on quantum meruit upon renunciation of executory contract — evidence — intention to destroy will.

A plaintiff who was the daughter-in-law of the defendant is entitled to recover upon a *quantum meruit* for work, labor and services rendered to the defendant in his household, where it appears that after her husband's death she was induced to live with the defendant and to perform household services upon his promise to provide for her by will, if there is evidence that he afterwards revoked the will providing for the plaintiff and ordered her to leave his house, and the action has been tried upon a *quantum meruit* without objection by the defendant as to the measure of damages.

The fact that the defendant when dismissing the plaintiff said, "you will never get another cent here," may be taken, in the absence of other evidence, as indicating his intention of destroying his will and of an intention to prevent the performance of his agreement with the plaintiff.

It is questionable whether such action should not have been brought for damages for breach of contract instead of upon a *quantum meruit.*

WOODWARD, J., dissented.

APPEAL by the defendant, William S. Tipple, from a judgment of the Supreme Court in favor of the plaintiff, entered

in the office of the clerk of the county of Otsego on the 31st day of October, 1918, upon the report of a referee appointed to hear and determine the issues.

*L. J. Barnes* [*George M. Palmer* of counsel], for the appellant.

*Barnum Brothers* [*S. W. Barnum* of counsel], for the respondent.

LYON, J.:

This appeal is from a judgment for labor and services. The plaintiff is the daughter-in-law of the defendant. Her husband was the only child, and died in 1910. He and the plaintiff had been married thirty years. They lived at the time of his death at New Baltimore, N. Y., and the funeral was held at the defendant's residence at Worcester, N. Y. Soon after the funeral, the plaintiff testifies the defendant told her to go back home, pack up her things and move to his home. He told her to sell such of her goods as she did not care to keep, as she would not move again, but should always make her home at his house. One of the witnesses called by the plaintiff testified that the defendant said: " I think Kit [meaning the plaintiff] ought to come and stay with us," and the defendant's wife said: " Why, yes, he is the only son and she is the only daughter." Defendant then hired one Fancher to go to New Baltimore, pack the furniture and bring it to Worcester, the defendant paying him for the service. The better furniture was placed in defendant's house, and a portion stored in defendant's barn, and another portion sold.

Defendant, his wife and his wife's niece, Alice Bidlake, who had made it her home there since she was a small girl and who still made her home there when not teaching, constituted the family. The defendant soon after this told the plaintiff that " he was thinking of having a will." The day he had his will made he told his wife and the plaintiff that he had remembered the plaintiff well in his will. The plaintiff was at this time about fifty years old. The defendant was about seventy-five years old. He had been a mason, but advancing years had compelled him to stop work. At the time the plaintiff became a member of the family the defend-

ant's wife was doing the house work assisted somewhat by the defendant. Alice Bidlake and plaintiff did not agree very well. When she was at home upon vacation the plaintiff usually took her vacation. The plaintiff remained in defendant's family, doing the washing and house cleaning, and assisting in the ordinary household duties. During the moderate illness of the defendant the plaintiff did his work. The wife's health began to fail soon after the death of her son and was perceptibly poorer three years from his death. During the last four years of her life she became gradually weaker, until she was unable to walk without assistance, which at times was rendered by plaintiff, and she died in August, 1917. She appears to have been of an even disposition, and to have frequently acted as pacifier between the plaintiff and the defendant who was somewhat quick tempered. He was eighty-three years old at the time of the trial in 1918, in fair health for one of his age, and had become somewhat forgetful. He had accumulated some property, and was one of the administrators of his son's estate, from the settlement of which the plaintiff received about $1,600 or $1,700.

About a year before she left, the defendant said he should think it was about time she would begin to want a home. She asked if he wanted her to take her things and go. He said, " not just now, but when you get ready, Alice will be here." About one month after the death of his wife, the plaintiff left the defendant's home. She testified: " I stayed until he told me to look for another place. I said ' what about this place here? ' He said ' you will never get another cent here.' So, of course, when he told me that, I knew that I was not wanted." Soon thereafter this action was brought.

She had received during the seven years she was in defendant's family five dollars which the defendant gave her soon after she went there. Plaintiff testified that in living there and in doing the work which she did, she relied upon defendant's statement that he had remembered her well in his will, and that she should never move away from his house. She testified that when she came into defendant's family it was with the understanding that she should be treated as a daughter, and that she was at all times ready to remain at

defendant's house and complete the performance of the agreement she made with the defendant. The plaintiff testified that her services were worth three dollars and fifty cents or four dollars per week when she first went there, and five dollars per week after three years' time. The defendant offered no contradictory testimony, assuming that she did the work which she claimed to have done, but denied that she performed such service. The referee agreed upon by the parties has practically found these facts. He has rendered a judgment in plaintiff's favor for one thousand two hundred and seventy-one dollars, and with costs and disbursements.

One question in this case is the plaintiff's right to any recovery. The defendant was living at the time of the trial. The will which he made in the year 1910 was not proven. It was not shown that it is still in existence. The threat which he made at the time of her dismissal, "You will never get another cent here," may be taken, in the absence of other evidence, as indicating the defendant's intention of destroying it. It indicates an intention to prevent performance of his agreement, and we think is sufficient to authorize a decision to that effect.

The leading case on plaintiff's right of recovery is that of *Henry* v. *Rowell* (31 Misc. Rep. 384; affd., on opinion in the court below, 63 App. Div. 620). In that case the decedent lived in plaintiff's family for twelve years under an agreement that she should be supported there during her lifetime, in consideration of which the decedent agreed to leave the plaintiff all the property she should then own. She lived fourteen years after leaving plaintiff's family. The court held that an action brought after her death was barred by the six years' Statute of Limitations. The case of *Henry* v. *Rowell* was distinguished in the case of *Ga Nun* v. *Palmer* (202 N. Y. 483). That was an action on a written contract by which the testatrix agreed to pay the plaintiff $70 a month as long as she lived and to give the plaintiff $20,000 upon her death for care in sickness and in health during her lifetime. She left the home of the plaintiff in May, 1900, with the intention of not returning, and made a somewhat similar oral contract with the defendant for her care and support. She died in August, 1906, making the defendant her sole legatee. The action

was brought in 1907. The trial court held, and the Appellate Division affirmed the judgment (139 App. Div. 910), that the action was barred by the six years' Statute of Limitations. The Court of Appeals held that as to whether the court correctly decided that the action could not be maintained after the testatrix's death by reason of the running of the statute, they now expressed no opinion. The court then discussed the leading csae upon the subject of remedies (*Hochster* v. *De la Tour*, 2 El. & Bl. 678), italicizing and quoting therefrom, " and it seems reasonable to allow an option to the injured party, either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party and cannot be prejudicial to the wrongdoer." The court cites many other decisions to the same effect and finally states: " In reaching this conclusion we have assumed, as above stated, that the breach was of such a character as to permit the bringing of an action for damages. We do not, however, wish to be understood as deciding that question, for the rule that renunciation of a continuous executory contract by one party before the day of performance giving the other the right to sue at once for damages is usually applied only to contracts of a special character; and the question whether it applies to such a contract as we have under review we leave undetermined. (*Kelly* v. *Security Mutual Life Ins. Co.*, 186 N. Y. 16; *Adenaw* v. *Piffard*, 202 N. Y. 122, 129; 25 Cyc. 1074.) " The court reversed the judgment dismissing the complaint as barred by the Statute of Limitations and granted a new trial. In 216 New York, 603, the case again came before the Court of Appeals upon an appeal from a retrial. The Appellate Division reversed the trial court and dismissed the complaint, holding that the findings of fraud were against the weight of evidence, and that the contract as to the $20,000 was in the nature of a specific legacy. (159 App. Div. 86.) The Court of Appeals reversed the Appellate Division, holding that the liability to the plaintiff was an indebtedness within the meaning of the rule, and granted a new trial.

The action at bar is brought upon a *quantum meruit* upon the renunciation of an executory contract before the day of

performance. As was said in *Hochster* v. *De la Tour* (*supra*), it seems reasonable to allow an option to the injured party either to sue immediately upon the breach of the contract or to wait till the time when the act was to be done. It may be questionable whether the action should have been brought for damages for breach of the contract instead of upon *quantum meruit*, but as this action has been tried without objection having been made to the proof offered on the measure of damages, we think the judgment should be affirmed, with costs.

All concurred, except WOODWARD, J., dissenting.

Judgment affirmed, with costs.