49 N.J. Super. 439 (1958)
140 A.2d 242
IN THE MATTER OF THE ESTATE OF CORA TIMKEN BURNETT, DECEASED.
Superior Court of New Jersey, Bergen County Court, Probate Division.
Decided March 28, 1958.
*440 Mr. Donald H. McLean, attorney for plaintiffs.
Messrs. Wharton, Stewart & Davis, attorneys for defendant Dr. John Clawson Burnett (Mr. T. Girard Wharton and Mr. William T. Stewart, Jr., of counsel).
Messrs. Morrison, Lloyd & Griggs, attorneys for defendants (Mr. John W. Griggs, of counsel).
Mr. Gerald E. Monaghan, guardian ad litem for infant defendants.
*441 GALANTI, J.C.C.
Cora Timken Burnett died a resident of Alpine, New Jersey, on January 7, 1956. In and by Item Third of her last will and testament she devised her real property lying east of Route 9-W, in the Borough of Alpine, Bergen County, New Jersey, together with the buildings and improvements thereon, to her husband, Dr. John C. Burnett.
Upon exceptions to the first intermediate account of the executors of the testatrix' estate, Gerald E. Monaghan, guardian ad litem for the defendants William Robert Timken, Jr., et al, had raised the question whether the devise of such property had adeemed at the time of Mrs. Burnett's death. The essential facts for determination of this issue are not in dispute. They are covered by a stipulation filed in the proceedings and by testimony of Dr. Burnett and may be briefly summarized as follows:
Dr. and Mrs. Burnett were married in 1920 and had occupied the Alpine property in question as their home for many years prior to her death. The property included the main house and numerous other buildings located on a tract of about 55 acres. Condemnation proceedings with respect to the property were pending at the time of the testatrix' death. The issue of ademption relates only to this property. Other property located west of Route 9-W in Alpine, New Jersey, which was given and devised to Dr. Burnett by Item Fourth of the decedent's will, was not connected in any way with their home property east of Route 9-W and was not the subject of condemnation proceedings.
Item Sixth of the will devises and bequeaths the residue of the testatrix' estate, "real and personal," one-half outright to her husband and one-half, in trust, to other beneficiaries. Item Twelfth, however, constitutes a separate residuary clause, by which the testatrix devises and bequeaths "any property that may revert to my estate, because of the failure of any of the trusts or gifts contained herein, to my husband, John Clawson Burnett."
*442 On May 22, 1953 an action was commenced by Dr. and Mrs. Burnett to enjoin the New Jersey State Highway Commissioner from condemning the Alpine property devised by Item Third of the will, after Commissioner Abbott had ordered the commencement of condemnation proceedings earlier in the month. A preliminary injunction was granted, but the New Jersey Superior Court modified the injunction to permit the Commissioner to take possession of part of the property (22 acres). This conclusion was affirmed by the New Jersey Supreme Court on January 11, 1954. 14 N.J. 291.
On September 9, 1953 the Highway Commissioner filed a complaint for condemnation of the property in question. Appointment of three commissioners was demanded to fix the compensation to be paid for the taking of the property. The Commissioner did not make or tender any deposit with the court of the estimated fair compensation for the property at the time of filing of the complaint or at any time thereafter. No payment of any amount of money for the property was made until after judgment fixing the amount payable had been rendered and affirmed by the Supreme Court in 1957, almost a year and a half after Mrs. Burnett's death.
On November 18, 1954 the State Highway Commission took possession of that part of the property over which its proposed parkway was to be constructed. This consisted of vacant land along the westerly side of the property. Dr. and Mrs. Burnett remained in possession of the principal part of the property, which included their home and other buildings, and Dr. Burnett did not finally vacate the premises until June 1957.
The three commissioners were appointed by the Superior Court and filed their report on December 13, 1955. The award of the commissioners for the Alpine property in question was in the amount of $1,245,321.50. A prompt appeal from the award was taken by both parties and, in an order dated January 6, 1956 (the day before Mrs. Burnett's death), and filed January 9, 1956, the Superior Court, Law Division, recited the issue to be tried as "the *443 fixing of the just compensation * * * for the taking of the said land and premises as of September 9, 1953."
On February 20, 1956 the court entered an order substituting Dr. Burnett for Cora Timken Burnett as owner of the real estate described in the complaint. The order was specifically founded by the court upon the provision in Mrs. Burnett's will which devised the Alpine property to her husband.
The matter was tried before a struck jury, and a verdict in the amount of $1,585,600 was returned. Judgment on the verdict was affirmed by the Supreme Court on May 13, 1957. State v. Burnett, 24 N.J. 280. In June 1957 a check in settlement of the judgment against the State of New Jersey was delivered to counsel for Dr. Burnett. Such check of the State of New Jersey, dated June 24, 1957, was made payable to John C. Burnett, was in the amount of $1,617,031.79, and included interest on the aforesaid judgment.
The questions involved are as follows:
1. Whether there was an ademption of the devise of the Alpine property made by the testatrix to her husband, Dr. Burnett, in and by Item Third of her will.
2. Whether if there was an ademption of such devise of the Alpine property, or proceeds ultimately received in the condemnation proceedings, passed one-half to Dr. Burnett and the other half in trust for other beneficiaries under Item Sixth of the will, or entirely to Dr. Burnett under Item Twelfth of the will.
This court must decide a case novel in this State and throughout the United States. In doing so the court must consider certain principles.
Bouvier's Law Dictionary, Rawle's Third, Revision, p. 134 defines "ademption" as follows:
"The extinction or withholding of a legacy in consequence of some act of the testator which, though not directly a revocation of the bequest, is considered in law as equivalent thereto, or indicative of an intention to revoke."
*444 Black's Law Dictionary defines the word "adeem" as follows:
"To take away, recall, or revoke. To satisfy a legacy by some gift or substituted disposition, made by the testator, in advance."
The law presumes that when a person makes a will he will thereby provide against what he has advanced or may advance to the beneficiaries in the will. Little v. Ennis, 207 Ala. 111, 92 So. 167 (Sup. Ct. 1922).
In the case of Mecum v. Stoughton, 81 N.J. Eq. 319 (Ch. 1913), the vice-chancellor said, at p. 326:
"If an intent to make a legacy specific is to be ascertained, that intent necessarily includes an intent to render the bequest subject to ademption in the event of the specific security being converted into cash."
Chief Justice Gummere discussed ademption in the leading New Jersey decision, In re Cooper's Estate, 95 N.J. Eq. 210 (E. & A. 1923):
"In the case of Morse v. Converse, 80 N.H. 24, 113 A. 214, a decision of the Supreme Court of New Hampshire, Parsons, chief-justice, in discussing the doctrine of ademption, thus defines its scope: `A legacy which is specific is adeemed when the particular thing given is wholly lost or destroyed; or is disposed of by the testator during his life; or is so altered by him in its form as to indicate a change of testamentary purpose on his part, an intentional partial revocation of his will.'"
The New Jersey courts, however, have striven to give effect to the testator's intent, where possible, and as a result have frequently held that there was no ademption of the legacy or devise even though the property no longer existed in the form described in the will. In re Cooper's Estate, supra; Chase National Bank v. Deichmiller, 107 N.J. Eq. 379 (Ch. 1930); Donath v. Shaw, 132 N.J. Eq. 545 (Ch. 1942); Arenofsky v. Arenofsky, 29 N.J. Super. 209 (App. Div. 1954); In re Armour's Estate, 11 N.J. 257 (1953).
There are no New Jersey cases in which the question of a possible ademption of a devise has arisen as a result of *445 condemnation proceedings. However, in our neighboring State of New York the Court of Appeals stated:
"`If a testatriv devises real estate, and sells the same before the will takes effect, the proceeds of the sale will become personal estate, and not court can substitute the money received by testatrix for the land devised.' * * * the only point to be considered, therefore, is whether a different rule obtains in the case of involuntary alienation, by operation of law, from that which prevails on a voluntary sale. Mr. Jarman asserts that the rule is the same in both cases, and the English decisions cited by him sustain the doctrine of the test. Jarman Wills, pg. 163. We see no such difference between a voluntary and an involuntary sale of the devised land as justifies a distinction in principle in the application of the rule that, where the testator has parted with the subject of the devise, all claims of the devisee is lost. While there is no authority on the point in this state (there is said to be none in the country), the question presented is not without analogy in the rule which determines in the cases of intestacy the character of the proceeds of sales by operation of law, whether they are to be considered as real or personal property." Ametrano v. Downs, 170 N.Y. 388, 63 N.E. 340, 58 L.R.A. 719 (Ct. App. 1902).
The same rule was applied by the Surrogate's Court of Richmond County in the case of In re Seaver's Will, 195 Misc. 475, 91 N.Y.S.2d 47 (1949), wherein Surrogate Boylan said (91 N.Y.S.2d, at page 48):
"If, at the time of his death, the testator does not own the specific property bequeathed, the bequest is impossible of fulfillment,  it has adeemed and the legatee receives nothing. Matter of Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A. 1918B, 663; Ametrano v. Downs, 170 N.Y. 388, 63 N.S. 340, 58 L.R.A. 719, 88 Am. St. Rep. 671; Crawford v. McCarthy, 159 N.Y. 514, 54 N.E. 277; Ga Nun v. Palmer, 159 App. Div. 86, 144 N.Y.S. 457, reversed 216 N.Y. 603, 111 N.E. 223. The doctrine of ademption applies also to specifically devised realty. Ametrano v. Downs, supra; Crawford v. McCarthy, supra. Under modern authorities, ademption is not a question of intention, but a rule of law. When the Courts look to how is the fact of change. That ascertained, they do not trouble themselves about the reason for the change."
In 1931 the Supreme Court of Vermont also held there would be ademption in the case In re Barrows' Estate, 103 Vt. 501, 156 A. 408, at page 413 wherein the court said:
*446 "We consider that the rule, supported by the weight of authority, to the effect that no question of intention is material, but that the test is whether the property remains in specie at the time of the death of the testator, ought to be adopted."
If the condemnation proceedings had been fully terminated prior to Mrs. Burnett's demise, there would be no problem; the premises in question would have been adeemed. Ametrano v. Downs, supra.
The question arises because the proceedings under eminent domain had not been finally concluded.
"The difficulty lies in determining at what point the taking occurs, for inevitably there is a point in valid proceedings by which land is seized which must be said to be the punctum temporis of the taking." LaFontaine's Heirs, etc. v. LaFontaine's Heirs, etc., a Maryland decision, 205 Md. 311, 107 A.2d 653, at page 655. The Court of Appeals continues:
"There is no uniformity in the decisions throughout the country as to the point when the taking occurs because of the differences in the statutes of the several States. * * *
In the States in which land may be taken for public use by administrative decision, and action, the filing of the formal act of the responsible agency usually fixes the time and extent of the taking: `* * * and when a formal act of taking is not required, the first actual authorized physical interference with the property affected marks the punctum temporis of the taking.' Nichols, Eminent Domain, 2nd Ed., Sec. 439, page 1152. In the take and then pay procedures, as in the pay before you take,' the essential which must be determined is the point when there concur the vestings of the right of the condemnor to take and the right of the owner to full compensation. It has been held that this point is  the taking occurs  when a condemnor entitled to condemn loses the right to abandon the proceedings. In re Twelfth Avenue South, 74 Wash. 132, 132 P. 868. The right to abandon ceases, the cases hold, when compensation has been paid or tendered, or the authorized appropriation of land for public use actually has taken place. Nichols, Eminent Domain, 2nd Ed., Sec. 417, p. 1097; 30 C.J.S. Eminent Domain, 335 b; City of Philadelphia v. Commonwealth, 284 Pa. 225, 130 A. 491; In re Certain Land, etc., 364 Pa. 71, 70 A.2d 847; State v. Flamme, 217 Ind. 149, 26 N.E.2d 917, 919; State ex rel. State Highway Comm. v. Deutschman, 1940, 346 Mo. 755, 142 S.W.2d 1025, 1027-1028. Maryland has followed this theory. In Petroli v. Mayor and City Council of Baltimore, 166 Md. 431, 171 A. 45, 47, the City neither *447 paid nor tendered an unappealed condemnation award. The appellants sought damages for the city's delay in carrying out the provisions of the award. The Court held that they could not prevail and also that they were not entitled to recover the award. Judge Offutt said for the Court: `Until the condemning corporation has actually taken the property, as in Pennsylvania R. Co. v. Reichert, 58 Md. 261, or until title has become vested in it by payment or tender of the award, the rights of the parties are so far ambulatory that the condemning corporation may abandon either the entire project or its right to take the particular property at the award.'" (Emphasis supplied.)
In State Roads Commission v. Warriner, 211 Md. 480, 128 A.2d 248, 250 (Ct. App. 1957), the LaFontaine case was cited for the proposition that payment into court of estimated full value, plus possession, the taking is complete.
The Interstate Parkway, which contemplated the use of the Burnett lands, was set forth by the New Jersey Legislature under chapter 74 of the Laws of 1947 (N.J.S.A. 27:6-1) and was designated as follows:
"Beginning at a point in the boundary line between the States of New Jersey and New York in the Borough of Alpine, connecting with the proposed Palisades Interstate Parkway to be built by the State of New York, and extending in a general southerly direction east of State Highway Route No. 1 to the vicinity of the George Washington Bridge; with a spur extending in a general westerly direction from the main parkway to Linwood Avenue, in the Borough of Fort Lee on said State Highway Route No. 1."
The south bound lane of the Parkway through the Burnett property was in the final stage of paving at the date of Mrs. Burnett's death, January 7, 1956.
N.J.S.A. 20:1-30 provides as follows:
"Abandonment of condemnation proceedings.
Any action or proceeding under this chapter may be abandoned at any time before the filing of the report of the commissioners, or within twenty days thereafter, or in the event of an appeal therefrom, before the entry of the judgment on the appeal or within twenty days after the entry thereof, provided there is paid to the owner and any other party who appeared in the action or proceeding, their reasonable costs, expenses and attorney fees as determined by the Court, and provided a discharge of the notice of lis pendens is filed. However any action or proceeding heretofore or hereafter instituted pursuant *448 to this chapter by a housing authority may be abandoned prior but not subsequent to the vesting of title to the property in the housing authority."
It is not clear in New Jersey when title passes. A review of the decisions discloses varied comments by the courts as to the time of title passing. Judge Clapp, speaking for the Appellate Division, said:
"The terms of this statute (authorizing the Highway Commissioner to `enter upon and take property in advance of making compensation therefor') are inexplicit as to whether or not title passes on the taking of the property." Milmar Estate, Inc. v. Borough of Fort Lee, 36 N.J. Super. 241 (1955).
While noting that the statute was inexplicit as to passage of title, he concluded at page 244 of 36 N.J. Super.:
"We shall assume however, that title does not finally vest in the State until the award is paid or tendered to the parties entitled, or duly paid into court."
Justice Jacobs in Taylor v. New Jersey Highway Authority, 22 N.J. 454, at page 460 stated (1956):
"The statute sheds little light as to when the strict legal title to the premises actually passed from Anna Jackson to the Authority. Cf. Delancey & Stockton Corp. v. Reliable Imp. Co., 134 N.J. Eq. 71, 75 (E. & A. 1943); In re Essex County Park Commission, 80 N.J. Eq. 1, 7 (Ch. 1912) affirmed sub nom., Bowers v. Town of Bloomfield, 81 N.J. Eq. 163, 207 (E. & A. 1913). If it did not pass until the final award was formally rendered and paid it may perhaps be related back to the declaration of taking. See Milmar Estate, Inc., v. Borough of Fort Lee, 36 N.J. Super. 241 (App. Div. 1935)."
Chief Justice (then Judge) Weintraub, in New Jersey Highway Authority v. Henry A. Raemsch Coal Co., 40 N.J. Super. 355 (Law Div. 1956), at page 359, commented:
"* * * The statute does not explicitly fix the date of passage of title, but its provisions point unmistakably to the date of the deposit. * * * The statutory theme is that the operative date as between the parties to the condemnation be the day upon which *449 the owner's right to possession is terminated by the initial deposit, notwithstanding that plaintiff's estimate of just compensation should prove to be low."
The taking in that case was pursuant to N.J.S.A. 27:12B-1. Under that statute the Authority could not abandon the proceedings subsequent to the date upon which it had taken possession.
The above condemnation decisions were not based on the doctrine of equitable conversion, but involved questions of the State's responsibilities and a municipality's right to taxes.
Under the applicable statute in the Raemsch case, the Authority could not abandon the proceedings subsequent to the date upon which it had taken possession. It indicated that under such statute, the date of the deposit was controlling. See New Jersey Highway Authority v. Henry A. Raemsch Coal Co., supra.
The conclusion to be drawn from the decisions involving condemnation proceedings, where the condemnor cannot abandon the proceedings, is that title does not pass until after payment for the property or deposit with the court has been made. New Jersey Highway Authority v. Henry A. Raemsch Coal Co.; Taylor v. New Jersey Highway Authority, supra. In that event there would be a revocation or ademption of a specific devise of realty.
In the case sub judice, condemnation proceedings were under the general provisions of the Eminent Domain Act. The cases indicate that the transfer of ownership of property to the Authority occurs at the time of tender or payment. See In re Essex County Park Commission, 80 N.J. Eq. 1 (Ch. 1912); Delancey & Stockton Corp. v. Reliable Imp. Co., 134 N.J. Eq. 71 (E. & A. 1943); Milmar Estate, Inc., v. Borough of Fort Lee, supra. Under the provisions of R.S. 20:1-30, the State could have abandoned the condemnation proceedings at any time up to a period extending beyond Mrs. Burnett's death. While the status of the improvement on the Burnett premises was such that it would have been irresponsible and ridiculous to have *450 abandoned the proceedings, nevertheless, the State Highway Authority had legislative authority to do so, by reimbursing the condemnees for their damages.
The "point of no return" is reached when the condemnor cannot abandon its proceedings.
Title to premises remains in a condemnee until "the filing of the report of the commissioners, or within twenty days thereafter, or in the event of an appeal therefrom, before the entry of the judgment on the appeal or within twenty days after the entry thereof * * *." N.J.S.A. 20:1-30.
The title not having passed at the time of Mrs. Burnett's death, I find that the Alpine property devised to Dr. John Clawson Burnett in and by Item Third of her will was not adeemed.
The exception to the accounting is stricken.