LOUISE C. ADENAW, as Executrix of M. EMELINE McMIL-
    LAN, Deceased, Appellant, v. PAULINE A. PIFFARD et
    al., Respondents.

**Evidence — erroneous admission of testimony against decedent prohibited by section 829, Code of Civil Procedure.**

Testatrix commenced an action, which was continued by her executrix as substituted plaintiff, to recover personal property in the possession of defendants who claimed it under an alleged agreement by which, in consideration of caring for said testatrix during her lifetime, defendants were to have the joint use of said property with testatrix during her lifetime and title thereto upon her death. Testatrix in a deposition taken before her death, which was admitted in evidence, testified "that at the time of the refusal of the defendants to deliver the property to her she had never parted with the ownership." *Held*, that this does not relieve a defendant from incompetency under the statute (Code Civ. Pro. § 829) so as to permit her to testify to a personal transaction with the decedent to the effect that the decedent had agreed to devise certain real estate

to the witness for her services, or that failing so to do the decedent would compensate her by leaving her by will an amount in cash or securities equal in value to such real estate.

*Adenaw* v. *Piffard*, 137 App. Div. 470, reversed.

(Argued March 29, 1911; decided May 9, 1911.)

APPEAL from a judgment, entered May 16, 1910, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant upon the verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Ritchie, Edwin A. Nash* and *William Carter* for appellant. The court at Trial Term erred in permitting the defendants, Pauline A. Piffard and D. Halsey Piffard, to testify to the making of the alleged contract with Mrs. McMillan over objection and exception by the plaintiff to their competency under section 829 of the Code of Civil Procedure. (*Martin* v. *Hillen,* 142 N. Y. 140; *Rogers* v. *Rogers,* 153 N. Y. 343; *Jones* v. *Perkins,* 29 App. Div. 37; *Abelein* v. *Porter,* 45 App. Div. 307; *Morgan* v. *Foran,* 120 App. Div. 185.) The alleged agreement of Mrs. McMillan to leave to Mrs. Piffard her personal property by will and devise to Mrs. Piffard the interest in the New York real property is not enforceable in this action. (*Kelley* v. *Ins. Co.,* 186 N. Y. 16; *Patterson* v. *Patterson,* 13 Johns. 379; *Pittman* v. *Pittman,* 110 Ky. 306; *Warden* v. *Hinds,* 163 Fed. Rep. 201; *Johnson* v. *Hubbell,* 10 N. J. Eq. 332.)

*John F. Connor* for respondents. The reading in evidence by the plaintiff of a part of Mrs. McMillan's deposition, wherein she characterized and in effect gave her version of the transactions that had taken place and

the agreement that had been reached between herself and Mrs. Piffard, under which the personal property in question had been delivered to the defendants, opened the way for the testimony of the defendants as to such transactions and agreement arising therefrom. (*Potts* v. *Mayer*, 86 N. Y. 302; *Cole* v. *Sweet*, 187 N. Y. 488; *Holcomb* v. *Holcomb*, 95 N. Y. 325; *Markell* v. *Benson*, 55 How. Pr. 360; *Clift* v. *Moses*, 112 N. Y. 427; *Tooley* v. *Bacon*, 70 N. Y. 34; *Nay* v. *Curley*, 113 N. Y. 575; *Viall* v. *Leavins*, 39 Hun, 291.) Upon the repudiation of the contract by Mrs. McMillan the defendant, Mrs. Piffard, was entitled to have her claim for damages determined and her counterclaim was available in this action. (*Schell* v. *Plumb*, 55 N. Y. 592; *Wakeman* v. *W. & W. Mfg. Co.*, 101 N. Y. 205; *Pakas* v. *Hollingshead*, 184 N. Y. 211.)

WILLARD BARTLETT, J. This is an action of replevin originally brought by Mrs. M. Emeline McMillan in her lifetime against the defendants, who are husband and wife, to recover the possession of certain chattels, the value of which is conceded to have been $2,215.70. The complaint alleged that the chattels were the property of the plaintiff, who was entitled to the possession thereof; but that the defendants became possessed of the same in June, 1899, and, though often requested to deliver them to the plaintiff before the commencement of the action, had refused and still refuse so to do.

The defendants in their separate answers denied that at the time of the commencement of the action the plaintiff was entitled to the possession of the chattels mentioned in the complaint, or that the defendants had ever wrongfully detained the same. They also set up a counterclaim which is the principal feature of the case. The averments of this counterclaim may be concisely stated as follows: On November 2, 1898, the plaintiff and Mrs. Pauline A. Piffard, one of the defendants, entered into

an agreement whereby Mrs. Piffard agreed to purchase
for a home the Piffard homestead in Livingston county
in this state, and to establish a home therein for herself
and her own family and for the plaintiff and maintain
the same during the plaintiff's lifetime. Mrs. Piffard
undertook to furnish suitable board for the plaintiff and
her maid, and stabling and care for the plaintiff's team,
the declared purpose of the agreement being "that the
relation of parent and daughter which for a number of
years previous thereto had existed between the plaintiff
and this defendant should be continued, and that the
plaintiff and this defendant and her family during the
lifetime of the plaintiff should live together as members
of one family." In consideration of the covenants by
Mrs. Piffard, Mrs. McMillan agreed to place and leave in
the aforesaid home in the possession of the said defendant
and her family certain property and furniture for their
joint use during the lifetime of the plaintiff which upon
her death should become the sole property of Mrs. Piffard.
She also agreed to pay to Mrs. Piffard toward the main-
tenance of the home $100 a month for at least eight
months in each year. "In consideration of the said
defendant having for a number of years prior thereto lived
with the said plaintiff as a daughter and companion con-
stantly caring for, serving and aiding the plaintiff and in
settlement and satisfaction of the plaintiff's obligation to
the said defendant for said services" Mrs. McMillan
further agreed to leave Mrs. Piffard by will part of a
parcel of real estate known as No. 152 Broadway in the
city of New York of the value of $47,833; and that if for
any reason she should fail to leave such interest to Mrs.
Piffard then Mrs. McMillan would pay her claim and
compensate her by leaving to her by will an amount in
cash or securities equal in value to Mrs. McMillan's interest
in said real estate.

In the counterclaim it was further alleged that Mrs.
McMillan about June 1, 1899, placed in the Piffard home-

stead in the possession of Mrs. Piffard the chattels mentioned in the complaint and sought to be recovered in this action which had ever since remained in Mrs. Piffard's possession under the provisions of the aforesaid agreement, all of which Mrs. Piffard had carried out and fully performed. It was also alleged that Mrs. McMillan had failed and neglected to perform the provisions of the aforesaid agreement on her part, but in violation thereof in the years 1902 and 1903 had removed from the said home certain of the aforesaid chattels and had failed to pay the stipulated $100 a month since May 1, 1903, and had denied and repudiated the said agreement, to the damage of Mrs. Piffard in the sum of $60,559, for which amount the defendant Pauline A. Piffard prayed judgment in her favor. Mrs. McMillan died before the trial and the action has been continued in the name of her executrix, the present plaintiff. The trial resulted in a verdict in favor of the defendant Pauline A. Piffard for $55,818.92. The trial court directed that the plaintiff's exceptions should be heard in the first instance by the Appellate Division. They were overruled, and the case now comes here on appeal from the judgment directed by the Appellate Division upon the verdict.

This record presents a striking illustration of the perils of litigation. An old lady commences a law suit to recover possession of $2,000 worth of personal property and as the outcome her estate is cast in damages in the sum of nearly $60,000.

In anticipation of her inability to attend the trial Mrs. McMillan's deposition was taken during her lifetime and a portion thereof was read as a part of the plaintiff's case. The trial court held that this evidence permitted the defendant, Pauline A. Piffard, to testify to the oral agreement between herself and Mrs. McMillan upon which the counterclaim was based. The question whether the plaintiff thus opened the door so as to relieve Mrs. Piffard from incompetency to testify to a personal transaction

with a deceased party under section 829 of the Code of Civil Procedure is the principal question in the case. I think that the learned trial judge erred in ruling as he did on this point, and that inasmuch as the error related to the very gist of the counterclaim, it requires us to grant a new trial.

In her deposition Mrs. McMillan testified that she was the plaintiff in the action, residing at Geneseo, New York, and was seventy-one years of age; that she caused to be delivered at the residence of Mrs. Piffard, the defendant, a certain amount of furniture and bric-a-brac which she should say was correctly set forth in her complaint; and that the articles were delivered about June, 1899, having previously been in her possession, and that she was the owner thereof on June 1, 1899, and had been for a long time prior thereto, having acquired them by purchase. She further testified that she had demanded the delivery of the property from the defendants in the fall of 1903, before the commencement of the action, but they had not delivered it to her; that it had not been taken from her by any warrant for the collection of a tax or fine or by virtue of any execution or attachment; that she had never sold or mortgaged the property, and " that at the time of the refusal of the defendants to deliver the property to her she had never parted with the ownership." It is this last statement that is relied upon by the respondents as opening the door to the testimony of Mrs. Piffard relative to the alleged oral agreement to devise the New York real estate to her. The argument is that this declaration of ownership by Mrs. McMillan negatived any transaction whereby it was claimed she agreed to transfer to Mrs. Piffard her real estate in New York city and hence that Mrs. Piffard could properly be allowed to give affirmative testimony tending to show that such a transaction took place. The flaw in this argument is obvious. It might be perfectly true that Mrs. McMillan had never parted with the ownership of the personal property

described in the complaint or mortgaged it and yet she might have made the very agreement pleaded by the defendants as the basis of the counterclaim. That agreement as stated in the answer of Mrs. Piffard did not provide for any change in the ownership of the articles which Mrs. McMillan was to place in the Piffard homestead until the death of Mrs. McMillan when, as the answer states, "the said articles, property and furniture should become the sole property of the defendant Pauline A. Piffard." All the interest in the property which the alleged agreement gave to Mrs. Piffard during Mrs. McMillan's lifetime was the right to use it jointly with Mrs. McMillan. Under section 829 of the Code of Civil Procedure Mrs. Piffard was prohibited from testifying concerning a personal transaction or communication between her and Mrs. McMillan unless the testimony of Mrs. McMillan had been given in evidence concerning the same transaction or communication. Mrs. Piffard, however, was permitted to testify freely and fully, over the objection and exception of plaintiff's counsel expressly based on this section of the Code, to the alleged oral agreement by Mrs. McMillan substantially as pleaded in the counterclaim. In my opinion there is not one word in the extract read from Mrs. McMillan's deposition which refers or can fairly be held to refer in the remotest degree to any such transaction.

The case presents another serious question. It will have been observed that the counterclaim was sought to be enforced by the defendants during the lifetime of Mrs. McMillan. At the conclusion of the charge, counsel for the plaintiff asked the trial judge to instruct the jury " that the alleged agreement by which Mrs. McMillan was to bequeath the furniture and property she had to the Piffard homestead, and to devise an interest in her real property by will to the defendant Pauline A. Piffard, is not enforcible in this action." The court refused so to charge and plaintiff's counsel duly excepted. This excep-

tion raises the question whether the anticipatory breach of a contract to devise property by will entitles the promisee to maintain an action to recover damages for such breach prior to the death of the promisor. In *Kelly* v. *Security Mutual Life Ins. Co.* (186 N. Y. 16) Judge VANN said: "The rule that renunciation of a continuous executory contract by one party before the day of performance gives the other party the right to sue at once for damages, is usually applied only to contracts of a special character, even in jurisdictions where it obtains at all," (p. 19) and he points out that in some states the principle is not recognized in any way whatever, saying that in this state it seems to be limited to contracts to marry, contracts for personal services, and contracts for the manufacture or sale of goods. A majority of the court, however, do not think it necessary to pass upon this question now but prefer to place our reversal upon the erroneous ruling on evidence which has been discussed. On account of that error the judgment must be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.