Mary F. Ga Nun, on Behalf of Herself and All Other Creditors of Jane M. Sands, Deceased, Appellant, *v.* Mary E. Palmer, Individually and as Executrix of Jane M. Sands, Deceased, Respondent.

Contract — when Statute of Limitations begins to run against cause of action thereon — contract to care for defendant's decedent in consideration of sum to be paid to plaintiff from decedent's estate.

1. The general rule is that a right of action does not accrue upon a contract until it is executed, or payment thereunder becomes due by its terms, and the Statute of Limitations does not commence to run until that event happens.

2. Plaintiff seeks to recover upon a contract made with defendant's decedent, which reads as follows: " *Nov.* 23, 1899 — I, Mary F. Ga Nun, do promise to care for Jane M. Sands in sickness and health as long as she lives. I, Jane M. Sands, do promise to pay Mary F. Ga Nun $70.00 a month for the support of the house and her clothes as long as I live, and at my death she is to have $20,000 that she will find in the safe deposit in New York, and she is to take my keys and distribute the packages in box as they are marked, and all my clothing and wearing apparel and silver. In short, everything in the house shall be Mary F. Ga Nun's.

"(Signed)                  JANE M. SANDS."

The trial court found that, in pursuance of such contract, the plaintiff undertook the care and maintenance of the decedent; that there was a breach of the contract by decedent in the early part of May, 1900, at which time she left the house of the plaintiff with the intention of never returning to reside with the plaintiff, and with the intention of never permitting the plaintiff to care for

her and afterwards entered into a similar oral contract with defendant; that she continued to reside with the defendant until she died on August 17, 1906, leaving a will in which she made the defendant her sole legatee and devisee, and appointed her sole executrix, after which this action was commenced. *Held,* that the plaintiff's right of action to recover the $20,000 stipulated in the contract was not barred by the Statute of Limitations. (*Henry* v. *Rowell,* 31 Misc. Rep. 384; 63 App. Div. 620, distinguished.)

*Ga Nun* v. *Palmer,* 139 App. Div. 910, reversed.

(Argued June 8, 1911; decided October 3, 1911.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 1, 1910, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term dismissing the complaint upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

· *Alton B. Parker, David H. Hunt, Frank C. McKinney, Robert D. Petty, William L. Rumsey, Charles Thaddeus Terry* and *George I. Woolley* for appellant. The doctrine of anticipatory breach does not apply to the case at bar. (*Kelly* v. *Ins. Co.,* 186 N. Y. 16; *Burtis* v. *Thompson,* 42 N. Y. 246; *Hochster* v. *De la Tour,* 2 El. & Bl. 678; *Howard* v. *Daly,* 61 N. Y. 362; *Windmuller* v. *Pope,* 107 N. Y. 674; *Nichóls* v. *Scranton Steel Co.,* 137 N. Y. 471; *Stanford* v. *Magill,* 38 L. R. A. 760.) Assuming that the doctrine of anticipatory breach does apply to the case at bar, the plaintiff's cause of action is not barred by the Statute of Limitations. (*Colburn* v. *Woodworth,* 31 Barb. 381; *Hochster* v. *De la Tour,* 2 El. & Bl. 678; *Johnstone* v. *Milling,* L. R. [16 Q. B.] 467; *Rochue* v. *Horst,* 178 U. S. 1; *Pierce* v. *Tenn. Coal, etc., Co.,* 173 U. S. 1; *Foss-Schneider Brewing Co.* v. *Bullock,* 59 Fed. Rep. 83; *Edward Hines Lumber Co.* v. *Alley,* 73 Fed. Rep. 603; *Marks* v. *Van Eeghen,* 85 Fed. Rep. 853; *Quackenbush* v. *Mapes,* 123 App. Div. 242;

*Moline Plow Co.* v. *Webb*, 141 U. S. 616; *Phœnix Nat. Bank* v. *Waterbury*, 197 N. Y. 161; *Pakas* v. *Hollings-head*, 184 N. Y. 211; *Burtis* v. *Thompson*, 42 N. Y. 246; *Windmuller* v. *Pope*, 107 N. Y. 674.)

*George H. Taylor, Jr.*, and *George .H. Hyde* for respondent. The legal conclusion of the Special Term dismissing the plaintiff's complaint is sustained as a matter of law by the finding that in May, 1900, the contract for personal services to be rendered by the plaintiff to Jane M. Sands was broken by the latter; plaintiff's actions for damages accrued immediately on this breach and her claim was, therefore, barred by the Statute of Limitations before Miss Sands' death in August, 1906. (*Henry* v. *Rowell*, 31 Misc. Rep. 384; 63 App. Div. 620; *Bonesteel* v. *Van Etten*, 20 Hun, 468; *Lee* v. *Decker*, 6 Abb. [N. S.] 392; *Dillon* v. *Anderson*, 43 N. Y. 231; *Howard* v. *Daly*, 61 N. Y. 362; *Windmuller* v. *Pope*, 107 N. Y. 674; *Kelly* v. *Ins. Co.*, 186 N. Y. 16: *Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471.)

HAIGHT, J. This action was brought to recover the sum of $20,000, alleged to be due and owing the plaintiff from the defendant's testatrix, and also to set aside certain transfers of property by the testatrix in her lifetime, alleged to have been made in fraud of the rights of creditors. The answer admits the making of a will by the defendant's testatrix and its admission to probate and denies the other allegations of the complaint, and then alleges that if any cause of action existed it is barred by the Statute of Limitations.

The contract upon which the plaintiff seeks to recover is as follows:

"*Nov.* 23, 1899 — I, Mary F. Ga Nun, do promise to care for Jane M. Sands in sickness and health as long as she lives. I, Jane M. Sands, do promise to pay Mary F. Ga Nun $70.00 a month for the support of the house

and her clothes as long as I live, and at my death she is to have $20,000 that she will find in the safe deposit in New York, and she is to take my keys and distribute the packages in box as they are marked, and all my clothing and wearing apparel and silver. In short, everything in the house shall be Mary F. Ga Nun's.

　　" (Signed) 　　　　　　　　JANE M. SANDS.

"LOUIS W. JANSEN,
" A. S. LEONARD, M. D.,
" W. G. BOUVIER,
　　　　　" *Witnesses.*"

The trial court found as facts that, in pursuance of such contract, the plaintiff undertook the care and maintenance of Miss Sands, and continued the same until May, 1900, when Miss Sands left her, and removed from the plaintiff's home in Brooklyn to the defendant's residence in Poughkeepsie, with whom she some time afterwards entered into a similar oral contract with defendant, but for less compensation; that she continued to reside with the defendant until she died on August 17, 1906, leaving a will in which she made the defendant her sole legatee and devisee, and appointed her sole executrix; which will was duly admitted to probate by the surrogate of Westchester county, who issued letters testamentary to the defendant, who thereupon duly qualified, and since has acted as such executrix. The court also found that there was a breach of the contract by decedent in the early part of May, 1900, at which time she left the house of the plaintiff with the intention of never returning to reside with the plaintiff, and with the intention of never permitting the plaintiff to care for her, all of which was well known to the plaintiff at the time decedent left her house and went to live with the defendant at Poughkeepsie; that the plaintiff then employed a lawyer to enforce her claim against the decedent, and he presented bills for the $70 per month up to May 1, 1900, and wrote

to the decedent demanding payment, and threatening action if payment was not made.

This action was brought on the 31st day of May, 1907, after the death of Miss Sands, and the court found as conclusions of law that more than six years having elapsed after the breach of the contract the plaintiff's right of action was barred by the Statute of Limitations.

None of the other issues raised by the pleadings have been tried out or determined, and consequently the only question brought up for review is that upon which the trial court has based its judgment. The clause of the contract in which Miss Sands agreed to pay the plaintiff $70 a month for the support of the house and her clothes, for which the plaintiff presented a bill up to the 1st of May, 1900, presents no question in dispute. There can be no doubt but that such payments were due and payable monthly, and that the amount thereof, at the time the bill was presented, then being due and payable, the statute commenced to run; and six years having elapsed before her death, the plaintiff's claim, therefore, became barred by the statute. We do not understand, however, that the plaintiff in this action claims to recover for the monthly allowance specified, but bases her right of action upon the further promise of Miss Sands, that at her death the plaintiff is to have the $20,000 which she would find in the safe deposit box.

The trial court, as we have seen, was of the opinion that there was a breach of the contract in its entirety at the time the decedent left the plaintiff's house, and that the statute also ran as to the claim for $20,000. In reaching this result the learned justice in his opinion refers to the case of *Henry* v. *Rowell* (31 Misc. Rep. 384; affirmed on the opinion below, 63 App. Div. 620) as an authority upon this subject, which he was bound to follow. That was an action on *quantum meruit* to recover for the value of twelve years' board and lodging furnished by the plaintiff to the decedent in her lifetime, under an agree-

ment to board and lodge her in his household as long as she should live, she agreeing to leave him by will all of the property she should own at the time of her death. After receiving board and lodging from the plaintiff for twelve years the decedent left his abode and went elsewhere and lived for fourteen years thereafter, and then died leaving a will in which she disposed of her property to other persons. Subsequently that action was brought. In that case it was held that there was a breach of the contract at the time that the decedent left the plaintiff's residence, and that the Statute of Limitations commenced to run at that time; that there was but one cause of action available to the plaintiff, and that was for the value of the board and lodging furnished by him up to that time. In that case there was no agreement to pay a definite sum for board and lodging per month or by the year, the only agreement to pay therefor being the promise of the decedent to make a will giving the plaintiff all of her property. It is, therefore, apparent that but one cause of action existed in that case. But whether the court correctly held that the action could not be maintained after the testatrix's death by reason of the running of the statute, we now express no opinion.

The case we have now under review differs from the above case, for under the agreement the decedent promised to pay the plaintiff $70 a month for the support of the house, etc., that being a definite, fixed amount payable monthly, for which an action could have been maintained therefor at the end of each month. With reference to the other provision of the agreement, instead of the decedent promising to make a will giving the plaintiff all of her property, she agreed at her death that the plaintiff is to have the $20,000 in her safe deposit box ; and instead of this action being brought for the value of services rendered on *quantum meruit*, it is brought upon the contract, the plaintiff claiming the stipulated sum expressed therein. It may be that but one cause of action exists in

favor of the plaintiff for the breach of the $20,000 clause of the contract, and that such an action could have been maintained at the time the decedent left the plaintiff's house and went to reside elsewhere. But in view of the fact that the plaintiff might meet with misfortune, disabling her from carrying out her part of the contract to care for the decedent "in sickness and in health as long as she lives," thus rendering the determination of the amount of her damages uncertain and difficult to prove, she saw fit to wait until the amount specified in the contract became due by the terms thereof. Did she have the right to do this? In answering this question we shall assume for the purposes of this review only, that the breach of the testatrix's contract was of such a character as to amount to a notice to the plaintiff that she would not carry out the provision with reference to the giving her $20,000 at the testatrix's decease, and that an action for damages could have been maintained immediately after such breach. The question thus arises as to whether the plaintiff was bound to treat the contract as broken and bring her action, or might she at her option treat the contract as still in force and wait until the sum specified became due under its terms?

In this case, as we have seen, the breach occurred after partial performance. This fact was deemed of importance in the case of Henry v. Rowell (supra), but we fail to see how it affects the right of the plaintiff to exercise her option. It is quite true that there is a distinction made in the authorities with reference to contracts which still are wholly executory and are to be performed in the future; but the distinction pertains to that which would constitute a breach of such contracts. Where the contract is wholly executory there must be some express and absolute refusal to perform, or some voluntary act on the part of the individual which renders it impossible for him to perform, in order to constitute an anticipatory breach for which an action will lie. Whereas by a par-

tially executed contract the breach may result from a failure to perform some of the provisions of the contract. But in either case, after a breach by one party, the rights of the other party and his remedies are the same as to the unexecuted provisions of the contract. (*Howard* v. *Daly*, 61 N. Y. 362.)

The leading case upon the subject of remedies is that of *Hochster* v. *De la Tour* (2 Ellis & Blackburn, 678). In that case the contract was wholly executory. On the twelfth day of April the defendant had agreed to employ the plaintiff in the capacity of a courier for a period of three months from the first day of June. But subsequently and before the first day of June the defendant gave the plaintiff notice that he would not require his services. Lord CAMPBELL, after discussing the authorities, states his conclusions as follows: "But it is surely much more rational, and more for the benefit of both parties, that, after the renunciation of the agreement by the defendant, the plaintiff should be at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damage he has suffered from the breach of it. Thus, instead of remaining idle and laying out money in preparations which must be useless, he is at liberty to seek service under another employer, which would go in mitigation of the damages to which he would otherwise be entitled for a breach of the contract. It seems strange that the defendant, after renouncing the contract, and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion, and that an opportunity is not left to him of changing his mind. * * * The man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured; *and it seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done,* still

holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer."

In *Frost* v. *Knight* (L. R. 7 Ex. 111), COCKBURN, Ch. J., after referring to the case of *Hochster* v. *De la Tour* (*supra*) and other cases, says: "The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance: but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it. On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

In the case of *Roehm* v. *Horst* (178 U. S. 1) the question arose upon a breach of executory contracts for the delivery of hops, after partial performance. In that case Chief Justice FULLER in delivering the opinion of the court, after reviewing the cases in England and in the states upon the question, holds that the rule is, that after the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damages he has suffered from the breach of it; but that an option should be allowed to the injured party, either to sue immediately, or to wait till the time

when the act was to be done, still holding it as prospectively binding for the exercise of his option. He then winds up his opinion upon the subject by stating: "Our conclusion is that the rule laid down in *Hochster* v. *De la Tour* is a reasonable and proper rule to be applied."

In the case of *Heery* v. *Reed* (80 Kans. 380) it was held that the fact that there was a renunciation of the contract by the decedent before his death did not compel plaintiff to end the contract relation. She was at liberty to keep the contract alive and await the time for final performance specified in the contract.

In the case of *Foss-Schneider Brewing Co.* v. *Bullock* (59 Fed. Rep 83) Taft, J., said: "It is true that, where a contracting party gives notice of his intention not to comply with the obligation of his contract, the other contracting party may accept this as an anticipatory breach of the contract, and sue for damages without waiting until the time mentioned for the completion and fulfillment of the contract by its terms; but, in order to enable the latter to sue on such an anticipatory breach, he must accept it as such, and consider the contract at an end."

In the case of *Pakas* v. *Hollingshead* (184 N. Y. 211) it was held that where the vendor of goods to be delivered and paid for in installments refuses to deliver an installment, a breach of the entire contract is thereby established for which the vendee, if he so elects, may immediately recover all his damages; or he may wait until the expiration of the time for the delivery of all the goods and then recover. While Cullen, Ch. J., filed a dissenting opinion in this case, he did not dissent as to so much of the decision as is stated above; but, on the contrary, expressly stated that the aggrieved party had the option to treat the contract as still continuing in force, notwithstanding the breach thereof by the other party.

A further citation of authority hardly seems necessary, for the general rule is that a right of action does not accrue upon a contract until it is executed, or payment

thereunder becomes due by its terms, and the Statute of Limitations does not commence to run until that event happens. The right to bring an action previous to that event is exceptional, and is only permitted in cases of a breach of a contract by one of the parties which permits the aggrieved party, at his option, to maintain an action for such breach and recover the damages he has suffered on account thereof. In reaching this conclusion we have assumed, as above stated, that the breach was of such a character as to permit the bringing of an action for damages. We do not, however, wish to be understood as deciding that question, for the rule that renunciation of a continuous executory contract by one party before the day of performance giving the other the right to sue at once for damages is usually applied only to contracts of a special character; and the question whether it applies to such a contract as we have under review we leave undetermined. (*Kelly* v. *Security Mutual Life Ins. Co.*, 186 N. Y. 16; *Adenaw* v. *Piffard*, 202 N. Y. 122–129; 25 Cyc. 1074.)

We do not deem it our duty to undertake a construction of the contract at this time and determine whether it contains an absolute promise to pay a specified sum upon the death of the testatrix; or whether it be in the nature of a specific legacy, as defined in the case of *Crawford* v. *McCarthy* (159 N. Y. 514–519), or the intention of the parties with reference thereto. It appears that the testatrix, at the time of executing the instrument, was an aged maiden lady, possessed of a fortune sufficient for her necessities. It may be that her distant relatives were over anxious to possess the surplus which she might leave. But all of these questions are for the trial court and are not at this time properly before us for determination.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WERNER, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.