In the Matter of the Estate of M. EMELINE McMILLAN, Deceased.

PAULINE A. PIFFARD, Appellant and Respondent; LOUISE C. ADENAW, as Executrix, et al., Respondents and Appellants.

Evidence — credibility of witnesses — contract with a deceased person — when usual rule of cogency of evidence to establish such contract, not applicable.

1. The strict rule as to the cogency of evidence requisite to establish a contract with a deceased person is not necessarily applicable where the person against whose estate the claim is made had full knowledge of its existence during her lifetime. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Holt* v. *Tuite*, 188 N. Y. 17, distinguished.)

2. A jury or other triers of fact need believe a witness only so far as they deem his testimony credible, and the same rule applies to the action of the Appellate Division in exercising its right to review questions of fact under like circumstances.

*Matter of McMillan*, 167 App. Div. 817, affirmed.

(Argued February 29, 1916; decided April 25, 1916.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 17, 1915, which modified and affirmed as modified a decree of the New York County Surrogate's Court directing a sale of decedent's real property for the payment of her debts. The petitioner appeals from the order so far as it modifies the decree of the Surrogate's Court. The defendants appeal therefrom so far as it affirms any portion of the decree.

The facts, so far as material, are stated in the opinion.

*John F. Connor, Charles D. Newton* and *Timothy A. Leary* for petitioner, appellant and respondent. The petitioner's claim was clearly established by evidence

of a most satisfactory and convincing character, and fully meets the requirements of the rule laid down in *Hamlin* v. *Stevens* (177 N. Y. 39). The court below erred in construing the former decision of the Court of Appeals as one dealing with the facts of the transaction at bar. (*Adenaw* v. *Piffard*, 202 N. Y. 122.) The witness D. Halsey Piffard, the petitioner's husband, was not disqualified under section 829 of the Code of Civil Procedure. (*Talbot* v. *Taubheim*, 188 N. Y. 426; *Hungerford* v. *Snow*, 129 App. Div. 816; *Lashaw* v. *Croissant*, 88 Hun, 206; *Hixson* v. *Rodbourn*, 36 Misc. Rep. 19; *Leary* v. *Corwin*, 28 Misc. Rep. 68; *Sands* v. *Sparling*, 82 Hun, 401; *Humphrey* v. *Sweeting*, 92 Hun, 447; *Bouton* v. *Welch*, 170 N. Y. 554.)

*William Ritchie* and *Albert Ritchie* for defendants, respondents and appellants. Under the rule of evidence relating to alleged contracts with persons since deceased the proofs herein do not support the decree nor justify any decree in petitioner's favor. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Stanton* v. *Miller*, 58 N. Y. 192; *Shakespeare* v. *Markham*, 72 N. Y. 400; *Brantingham* v. *Huff*, 174 N. Y. 53; *Mahaney* v. *Carr*, 175 N. Y. 454; *Ide* v. *Brown*, 178 N. Y. 34; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Roberge* v. *Bonner*, 185 N. Y. 265; *Holt* v. *Tuite*, 188 N. Y. 17; *Tousey* v. *Hastings*, 194 N. Y. 79; *Taylor* v. *Higgins*, 202 N. Y. 65.) The testimony of petitioner's husband as to conversations between the petitioner and Mrs. McMillan, since deceased, was inadmissible under section 829 of the Code of Civil Procedure. (*Blair* v. *Blair*, 160 App. Div. 781; *Nolan* v. *Nolan*, 78 Mich. 17; *Com.* v. *Carroll*, 124 Mass. 30; *Matter of Straut*, 126 N. Y. 201; *Bracken* v. *Atlas Co.*, 36 App. Div. 67; *St. James Co.* v. *Sec. Tr. Co.*, 82 App. Div. 242; *Meinhart* v. *Excelsior Co.*, 98 App. Div. 308; *Weber* v. *Columbia Co.*, 160 App. Div. 835; *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 161; *Castle* v. *Noyes*, 14 N. Y. 332; *Woodhouse*

[218 N. Y.]   Opinion, per WILLARD BARTLETT, Ch. J.          [April,

v. *Duncan*, 106 N. Y. 532; *Emma Mfg. Co.* v. *Emma Co.*, 7 Fed. Rep. 408.)

WILLARD BARTLETT, Ch. J.   This controversy grows out of an alleged contract between a wealthy widow and her niece.   The widow was Mrs. M. Emeline McMillan who was born in 1832 and died in 1907.   The niece is Mrs. Pauline A. Piffard whose maiden name was Pauline Arthur.   In 1885 when Pauline Arthur was twenty years of age her widowed mother died in Rome, Italy, and, thereupon, Pauline who became possessed of independent means of her own upon her mother's death, went to reside with her aunt, Mrs. McMillan, and lived and traveled with her upon terms of close intimacy for many years thereafter.   They had a family home in Washington, D. C., which was broken up by the death of relatives, and another in Geneseo, New York, which was maintained by the aunt aided by contributions from the niece. In February, 1898, Pauline Arthur married D. Halsey Piffard who was then upwards of fifty years of age without property or any business.   In November of the same year according to the claim of the petitioner the contract was made between her and her aunt which has given rise to this proceeding.

That contract as found by the referee in the Surrogate's Court was conditioned upon the purchase by Mrs. Piffard of the Piffard homestead in Livingston county, a place of forty acres with a dwelling thereon to be occupied and used as a home for herself and Mrs. McMillan during the lifetime of the latter.   Mrs. Piffard agreed to repair the house and maintain the household and provide such furniture as should be needed in addition to that belonging to Mrs. McMillan.   The referee further found that Mrs. McMillan on her part agreed to pay certain specified amounts — approximately one hundred dollars a month — toward the expense and maintenance, and to provide horses, a carriage and the necessary equipment for the

use of the family, together with a coachman; while she promised upon her death to leave Mrs. Piffard the equivalent in cash or other securities of the value of one-half of a 287/1000 undivided interest belonging to her in real property located at No. 152 Broadway in the city of New York.

The Piffard homestead was purchased and put in order and the parties began to occupy it in May, 1899, living there until October, 1902, when Mrs. McMillan departed ostensibly for a visit. She never resided there after leaving the Piffard homestead in this manner. In 1907 she died leaving a will which contained no mention of her niece, Mrs. Piffard, although if she had died intestate Mrs. Piffard would have been entitled to one-half of her property. In view of the long and affectionate intimacy which had existed between the aunt and niece the failure of Mrs. McMillan to return to her home after her departure in 1902 and the omission to mention her niece in her will are strange features of a case which is remarkable in many ways.

The referee to whom the case was referred in the Surrogate's Court found that the alleged contract was established by satisfactory evidence, and his report and opinion were adopted by the surrogate, who made a decree adjudging that the amount due to the petitioner under the contract was $49,094.95, and directing a sale of the real property of the decedent in order to provide for the payment of the said amount with interest. This decree has been partly reversed by the Appellate Division and partly affirmed. The reversal being upon the facts this court cannot interfere unless the action of the Appellate Division was influenced by some erroneous view of the law.

The principal witness for the petitioner upon whom she relied to establish the alleged contract was her husband, D. Halsey Piffard. The testimony of several nurses and a servant was offered by the petitioner in corroboration,

but the Appellate Division regarded it as of no value and expressly held that the judgment depended upon the evidence of Mr. Piffard who, although not incompetent under section 829 of the Code of Civil Procedure, was nevertheless an interested witness. Accordingly the Appellate Division concluded to reject Mr. Piffard's testimony in part and accept it in part. "We think that justice would be done," says Mr. Justice CLARKE, writing for the court, "by accepting so much of the testimony as would establish the contract so far as it related to the mutual obligation of the parties during the life of Mrs. McMillan. We do not feel justified in finding any valid contract affecting the disposition of Mrs. McMillan's property after her death." This view has resulted in a modification of the decree of the Surrogate's Court so as to give the petitioner about one-tenth of the amount which it awarded to her.

The Appellate Division quotes the language used by Judge VANN in *Hamlin* v. *Stevens* (177 N. Y. 39) as applicable to the contract in the present case, and also cites *Holt* v. *Tuite* (188 N. Y. 17) to the same effect. In those cases, however, it is to be noted that the contracts there in question were first asserted to exist after the death of the testator whose property was sought to be charged; whereas in the case at bar the alleged contract was the basis of a claim made against Mrs. McMillan in her lifetime so that she had full knowledge that Mrs. Piffard alleged that such a contract existed. In 1906 Mrs. McMillan brought an action in replevin in the Supreme Court in Livingston county against Mr. and Mrs. Piffard to recover the furniture which she left in the homestead upon her departure in 1902 and in that suit Mrs. Piffard pleaded a counterclaim based upon the very agreement which is in controversy here. She recovered a verdict upon this counterclaim for upwards of $50,000, but the judgment entered thereon was reversed by this court for an error in the admission of evidence. (*Adenaw*

v. *Piffard,* 202 N. Y. 122.) In the opinion we called attention to the fact that Mrs. McMillan having com-. menced a lawsuit to recover possession of $2,000 worth of personal property, her estate had been cast in damages in the sum of $60,000; and this incidental remark is quoted by the Appellate Division as significant and has been much emphasized by counsel for the defendants as intimating an unfavorable view of the petitioner's claim. The merits of that claim were not then before us and we did not suppose we were expressing any opinion in regard thereto one way or the other.

The fact that Mrs. McMillan had full knowledge of the Piffard claim during her lifetime differentiates this case so essentially from *Hamlin* v. *Stevens* and *Holt* v. *Tuite* (*supra*) that the rule laid down therein as to the cogency of evidence requisite to establish a contract with a deceased person is not necessarily applicable here; that is to say, the Appellate Division might have upheld the contract in its entirety as alleged without insisting upon stronger and more ample proof thereof than is contained in this record. In other words, it was not error as matter of law for the Surrogate's Court to hold that the contract was established in full by the testimony taken before the referee. Nevertheless the Appellate Division by virtue of its power to review the facts was entitled to take a different view of the weight which ought to be given to the evidence, and its conclusion in that respect cannot be questioned here. Although it was suggested on the argument that it was illogical to believe Mr. Piffard in respect to a part of the contract and disbelieve him as to another and more important part, it has often been held that a jury or other triers of fact need believe a witness only so far as they deem his testimony credible, and there is no reason why the same rule should not apply to the action of the Appel late Division in exercising its right to review the questions of fact in a case.

Inasmuch, therefore, as the modification (which is

really a reversal of the greater part of the surrogate's decree) is upon the facts and the Appellate Division has not committed any error of law, it follows that the order appealed from must be affirmed, without costs to either party in this court.

HISCOCK, COLLIN, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Order affirmed.