SELECT PICTURES CORPORATION v. AUSTRALASIAN FILMS, Limited.

(District Court, S. D. New York. June 23, 1919.)

1. CONTRACTS ⬅️10(1)—VALIDITY—MUTUALITY.

In a contract by which plaintiff granted to defendant for a stated term the exclusive right to distribute, exploit, lease, and exhibit in Australasia all motion pictures designated by defendant from among those released by plaintiff, and defendant agreed to designate and accept not less than a specified number, certain conditions inserted for the protection of one or other of the parties *held* not to destroy the mutuality of the contract.

2. CONTRACTS ⬅️337(1)—ACTION FOR BREACH—SUFFICIENCY OF COMPLAINT.

A complaint *held* to state a cause of action for anticipatory breach of a contract.

At Law. Action by the Select Pictures Corporation against the Australasian Films, Limited. On demurrer to complaint and motion by defendant for judgment on the pleadings. Demurrer overruled, and motion denied.

The parties entered into a written agreement dated December 19, 1918. By said agreement, Select Company granted to Australasian Films the sole and exclusive right to distribute, exploit, lease, and exhibit, in Australasia, for

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

periods of three years each from and after the respective dates of delivery thereof to defendant, all motion pictures designated by defendant in accordance with the terms of said agreement from among motion pictures released by plaintiff prior to March 31, 1920, and defendant agreed to designate and accept from the plaintiff for distribution as aforesaid at least one motion picture per week during each and every week for the period from April 1, 1919, to March 31, 1920 (subject to the proviso that, if there should be available for selection so few motion pictures that one motion picture per week would amount to more than 80 per cent. of the motion pictures so available, defendant's obligation to take one picture per week should be accordingly reduced), and to pay the plaintiff upon delivery of each picture, for the rights of distribution and exploitation with respect thereto, $4,500, and defendant agreed to and did pay $18,000 in payment for the rights to the last four motion pictures deliverable under the contract. The agreement further provides, in section 1, that performance by defendant of its obligation to take at least one picture per week shall be a condition of the contract.

The complaint alleges that defendant has neglected and refused to designate or accept any motion picture under the contract as required by its provisions, although requested by plaintiff so to do; that plaintiff was at all times ready, able, and willing to perform each and every term, covenant, and condition of the contract on its part to be performed, and to deliver to defendant motion pictures selected by defendant in accordance with its provisions, and would have done so had it not been prevented by defendant's neglect and refusal.

The complaint further alleges that defendant notified plaintiff in writing on April 19, 1919, that defendant would not designate or accept any motion pictures under the contract, and that it repudiated the contract; and that on April 23, 1919, plaintiff notified defendant in writing that it elected to regard said repudiation of the contract by defendant as an anticipatory breach of said contract, and of the whole thereof, and to treat said contract as abandoned by reason of such breach.

The complaint then alleges the inability of plaintiff to dispose of the rights of distribution of the motion pictures mentioned in the contract for the territory therein specified to any one other than the defendant, and that by reason of the premises plaintiff has been damaged in the sum of $216,000 over and above the sum of $18,000 paid by defendant to plaintiff under the contract, and demands judgment accordingly in the sum of $216,000, with interest.

Konta, Kirchwey, France & Michael, of New York City (Karl W. Kirchwey, of New York City, of counsel), for plaintiff.

Joseph P. Bickerton, Jr., and Philip Wittenberg, both of New York City, for defendant.

MAYER, District Judge (after stating the facts as above). The main grounds of demurrer are that (a) the agreement lacks mutuality; and (b) under the decisions of the New York courts the plaintiff cannot recover as for an anticipatory breach.

[1] 1. *Lack of Mutuality.* Defendant practically concedes that if plaintiff's obligation was the grant to defendant of the sole and exclusive right to distribute, etc., all motion pictures for the period agreed upon, then the contract, as drawn, would be supported by mutual considerations. In this regard the contract would not be different in principle from that class of contracts where the manufacturer agrees to sell, and the customer to buy, all of a designated product which the manufacturer will produce during an agreed period, nor different from the converse type of contract where the customer agrees to buy, and the seller to sell, all the goods of a designated kind

required by the buyer in the operation of a particular plant, factory, or mine. Ramey Lumber Co. v. John Schroeder Lumber Co., 237 Fed. 39, 150 C. C. A. 241; Burgess Sulphite Fibre Co. v. Broomfield, 180 Mass. 283, 62 N. E. 367; City of New York v. Delli Paoli, 202 N. Y. 18, 94 N. E. 1077; Golden Cycle Mining Co. v. Rapson Coal Mining Co. et al., 188 Fed. 179, 112 C. C. A. 95; Lima Locomotive & Mach. Co. v. Nat. Steel Castings Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713; Manhattan Oil Co. v. Richardson Lubricating Co., 113 Fed. 923, 51 C. C. A. 553; Secor v. Ardsley Ice Co., 133 App. Div. 136, 117 N. Y. Supp. 414, affirmed 201 N. Y. 603, 95 N. E. 1139; W. P. Fuller & Co. v. Schrenk, 58 App. Div. 222, 68 N. Y. Supp. 781, affirmed 171 N. Y. 671, 64 N. E. 1126; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696.

But it is contended that the "grant," so called, by plaintiff is indefinite, and fixes no obligation on plaintiff because of the provisions in the agreement, as follows:

(1) "The foregoing grant shall relate only to such pictures as to which Select Company shall have exclusive rights of distribution in said territory during said period."

(2) "It is understood and agreed, however, that the Select Company assumes no responsibility for the protection or validity of the rights of distribution and exploitation hereby granted under or by virtue of the laws of any of the countries within the territories aforesaid, but the distributor shall and may, at its own expense, take such steps as it may deem necessary to protect such rights under said laws and assume the entire responsibility therefor."

(3) "It is the intention of this agreement that the distributor shall take, in the order of their release in the United States, not less than eighty per cent. (80%) of the motion pictures which the distributor is entitled to designate for delivery hereunder, provided said eighty per cent. (80%) is not greater than fifty-two (52) pictures; but it shall not be required to take more than fifty-two (52) of such motion pictures, in any event, if fifty-two (52) shall be less than eighty per cent. (80%) of those designated. It may take, however, at its option, a greater number than fifty-two (52) if available. In the event that there shall be available for selection motion pictures so few in number so that as a result of performance of distributor's obligation to take at least one (1) motion picture per week, it would be required to take more than eighty per cent. (80%) of such motion pictures, its obligation to take one motion picture per week shall be accordingly reduced."

Obviously, (1), supra, was as much for the protection of defendant as for some business expediency of plaintiff. The obligation upon defendant to designate and accept at least one motion picture each week, if unqualified would have compelled it to take pictures which might come in competition with other distributors. The book, play, or scenario on which a motion picture was constructed might be such as to give rights to others in the Australasian territory, and it is plain that the parties intended that the right of defendant was to be "the sole and exclusive right to distribute," etc., in the territory named. Such measure or clause of protection cannot now be availed of by defendant as an argument that the grant was indefinite. The effect of this clause was merely to reduce, in accordance with other clauses of the contract, the number of pictures which defendant was obligated to take, and to protect it for the reasons stated.

As to (2), it is plain that the "grant," so called, was in the nature of a conveyance of all right, title, and interest, and not a warranty that the picture could be distributed or exploited under the laws of the foreign territory. It might very well be that in such territory there might be laws preventing distribution or exploitation for one reason or another. Plaintiff merely declined to assume responsibility in that regard, and defendant assumed the burden of determining its rights under the laws of the countries where it might desire to exhibit the pictures. Such a provision in no manner rendered the contract indefinite, for a reasonable construction of the contract would undoubtedly justify the defendant in refusing to take any and all pictures, where the right exclusively to distribute or exploit such picture or pictures was destroyed or impaired by virtue of the laws of the territory where they were to be distributed and exploited.

As to (3), supra, it is plain that this provision must be tested by the relevant context of the whole contract. This was a protective provision in favor of defendant, so that defendant would not be called upon to take one motion picture per week, if so doing would work out to be more than 80 per cent.

Plaintiff was obligated throughout to grant to defendant the sole and exclusive right to distribute, etc., in Australasia, etc. The mutual considerations moving between the parties are well within the principle of the Ramey Case, supra. Doubtless argument may be advanced seeking to differentiate the facts which appear in the various cases cited, supra, but the principle of law is clearly set forth in one form or another in each of them. In the Ramey and some of the other cases, the fact that the seller might have nothing to sell, or that the buyer might not buy at all, did not destroy mutuality, in view of other covenants or agreements in the contracts considered in these various cases. In the case at bar the three clauses above discussed do not in any manner affect the fundamental structure of the contract, but are merely provisions of caution. (1) and (3) to protect defendant, and (2) to protect plaintiff, in respect of subject-matter against which both parties might reasonably wish to be safeguarded.

In Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., supra, one of the tests of validity in the so-called will, wish, or want contracts is whether "the quantity is ascertainable otherwise with reasonable certainty." In the case at bar it was the clear intent of the parties that plaintiff should be obligated to submit for designation by defendant the motion pictures "heretofore and hereafter released by" plaintiff. The motion pictures "heretofore" released were certainly capable of ascertainment. While the motion pictures "hereafter" released were not capable of mathematical ascertainment, it is clear that this part of the contract referred as much to the product of plaintiff as if the plaintiff were selling ordinary merchandise.

I am of opinion, therefore, that the contract was valid and enforceable, and not void for lack of mutuality.

[2] 2. *The Breach.* The complaint in paragraph fifth sets forth that plaintiff notified defendant in writing that it elected to regard

defendant's repudiation of the contract as an anticipatory breach. In paragraph fourth the complaint alleges, inter alia:

"Plaintiff was at all times ready, able, and willing to perform each and every term, covenant, and condition of said contract of December 19, 1918, on its part to be performed, and to deliver to defendant motion pictures selected by defendant in accordance with its provisions, and would have done so had it not been prevented by defendant's neglect and refusal aforesaid."

In paragraph seventh plaintiff alleges "by reason of the premises plaintiff has been damaged in the sum of $216,000. * * *"

It is difficult to determine from the pleadings whether the breach is to be regarded as anticipatory or actual. Ordinarily, "an anticipatory breach precedes the time prescribed for its performance, or at least the time when tender of performance has been proffered." Wester v. Casein Co. of America, 206 N. Y. 506, 514, 100 N. E. 488, Ann. Cas. 1914B, 377.

The theory of the contract is that the first step shall be the release by plaintiff of motion pictures. Obviously, before defendant was called upon to select and designate, plaintiff was required to release the subject-matter of the selection. Thus the second step under the contract, viz., the selection and designation by defendant, was to be taken only when, and not until, plaintiff has released motion pictures.

Nowhere in the complaint is there a clear allegation of such release prior to April 19, 1919, the date of repudiation by defendant.

Allegation "fourth" sets forth that plaintiff was ready, able, and willing to perform its part, but does not set forth that it did anything up to April 19, 1919, although under the contract it was clearly contemplated that releases could begin on April 1, 1919, and that from that date defendant could designate and accept at least one motion picture per week from those available. The same allegation also sets forth that plaintiff "would have" delivered pictures if it had not been prevented by defendant. This allegation, together with allegation "fifth," clearly indicates that the complaint is drawn on the theory of an anticipatory breach and not of an actual breach.

The fact that defendant paid plaintiff $18,000 for the rights in the last four pictures does not change the character of the breach, because that arrangement was part and parcel of the written contract, and cannot be regarded as a part performance of the prospective features of the contract.

If, therefore, as plaintiff now contends, the breach was actual, then the complaint must be amended to set forth clearly the facts from which it shall appear on the face of the complaint that the breach was actual and not anticipatory; for defendant is entitled to know what it is called upon to meet, in view of the fact that it may very well be that a different kind of proof may be necessary to prove damages as for an actual breach from the proof necessary to prove damages in a case of anticipatory breach. Indeed, it might well happen that the damage in a case of actual breach might in one case be more, and in another case be less, than in a case of anticipatory breach.

Assuming, then, for the purposes of this complaint, that the breach is anticipatory, the first question is whether the law applicable to this

case is that laid down by the New York courts or the United States courts. In the absence of agreement to the contrary, this court would follow the rule of the United States courts to determine whether a cause of action arose from the breach.

If the New York rule were to be applied, it is questionable whether plaintiff has a cause of action, because of the limitations which it is contended are placed by the New York courts upon actions for damages for anticipatory breaches. Kelly v. Security Mutual Life Ins. Co., 186 N. Y. 16, 78 N. E. 584, 9 Ann. Cas. 661; Adenaw v. Piffard, 202 N. Y. 122, 129, 95 N. E. 555; GaNun v. Palmer, 202 N. Y. 483, 96 N. E. 99, 36 L. R. A. (N. S.) 922.

But it is unnecessary to speculate whether or how far these cases limit the classes of cases where a cause of action arises out of an anticipatory breach, because the clause of the contract upon which defendant relies does not permit defendant to invoke the law of the New York jurisdiction in this regard.

Paragraph "eighth" of the contract provides:

"It is understood and agreed by and between the parties hereto that all questions arising hereunder shall be interpreted and governed under and by the laws of the state of New York."

This clause must be construed as applying only to the interpretation of the contract. It cannot be assumed to operate in respect of the rights of the parties in the event of a breach. In such event, the law of the forum controls.

If this be so, then the principle of Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, applies, and that principle has consistently prevailed in the United States courts.

It is true that the rule is otherwise in some jurisdictions, and that some learned authors have criticized and questioned it; but it is not only authoritative in this court, but, in the progress of business enterprise, it has developed as a sound and sensible rule, and it has always been difficult to understand why in principle there should not be a cause of action in any case because of anticipatory breach.

Finally, it is contended that the agreement amounts to a license or lease, and therefore that an action for anticipatory breach will not lie.

In motion picture contracts the languge of real estate seems to be somewhat the vogue. Leases, grants, and the like are very often misnomers. In the case at bar, what the contract does is to sell or dispose of certain rights, with certain safeguards and restrictions necessitated by the peculiar requirements attendant upon the production and exploitation of the merchandise of this business, i. e. motion pictures; and when a man agrees to sell and another man to buy these rights, a cause of action for redress for a breach need not be mystified by importing into the case the law which might be applicable to real estate leases.

It is concluded, therefore, that the complaint sets forth a cause of action for anticipatory breach, and is not demurrable.

The demurrer is overruled, and the motion to dismiss denied. without costs, and defendant may have 15 days within which to serve its answer.

If, however, plaintiff desires to amend the complaint so as to stand on actual breach, it may do so without costs, within 15 days, provided it notifies defendant accordingly within 10 days.