In the Matter of the Estate of LAURA J. POST, Deceased.*

Surrogate's Court, New York County, January 17, 1928.

Gifts — joint gift — gift of securities to decedent and her sister was not joint — estate of decedent entitled to one-half of securities.

The decedent and her sister survived their aunt who had given them certain securities. The surviving sister contends that the securities were given to the decedent and herself jointly, and that, therefore, she, as survivor, is entitled to all of them.

The burden of proof was upon the surviving sister to establish that the gift was joint, for section 66 of the Real Property Law states that a grant shall not be considered to be joint unless it is expressly so stated.

The testimony by the surviving sister and her husband as to conversations with the owner, which occurred about forty-six years ago, tending to show that the aunt specifically stated that she was giving the securities to the two nieces jointly, does not establish that there was a joint gift. This conclusion is fortified by a doubt as to whether or not the aunt understood the meaning of the word " joint " and by the provision in her will in which she gave property to the same nieces but not jointly.

DISCOVERY proceeding involving question whether gift to two nieces was as joint tenants or as tenants in common.

* Affd., 224 App. Div. 830.

14

Surrogate's Court, New York County, January, 1928.          [Vol. 132

*Satterlee & Canfield* [*R. Randolph Hicks* and *Lloyd F. Thanhouser* of counsel], for the petitioner.

*Montgomery, Peabody & Grace* [*John S. Montgomery* of counsel], for the respondent.

O'BRIEN, S.    Elizabeth C. Buchanan *died in 1893.* She left surviving her, two nieces, Laura J. Post and Maria J. O'Conor. These nieces had lived with their aunt at No. 24 East Thirty-third street in a house owned by the latter.    From 1881 John C. O'Conor, who had in that year married one of said nieces, lived in the same household.    Laura J. Post died on March 12, 1927, and now the executor of her estate claims one-half of certain securities which were originally the property of the aunt, Elizabeth C. Buchanan, and which Mrs. O'Conor and the executor of her sister's estate, the parties to the present controversy, concede to have been the subject of a gift to said two nieces at or about the time of the marriage of the O'Conors.    The parties are in conflict upon the question of the nature of the gift; one contending that the donees received the securities as joint tenants and the other asserting that the gift was to the two nieces as tenants in common.    The record upon the trial of the issue is very meagre.    On the side of Mrs. O'Conor it consists solely of her testimony and that of her husband which testimony relates principally to the claimed expressions upon the part of the aunt at about the time of the turning over of the securities.    These expressions are not presented as literal statements of said aunt.    In her testimony Mrs. O'Conor testified as follows: " She said she wished us to have them forever to go toward the maintenance of the house, and the understanding clearly being that they were given to us jointly and that the survivor would take the whole; whichever one went first the other one was to have it.    It was a gift out and out then and after to us jointly."    In his testimony Mr. O'Conor testified as follows: " I had frequent conversations about this fund.    During her lifetime, from time to time she frequently alluded to this gift, sometimes in a joking way and sometimes in a serious way, but it was always in her mind. She told me that she wanted to be relieved of all her cares and also that she wanted to provide for her two nieces and that she had turned over all of her securities to them for the purpose of keeping a roof over their heads.    She said there was sufficient for them and if either died the other would take the balance, and she frequently stated that, and that she wanted them to have this so that they would be protected for their lives with a roof, and that she had turned over all the securities.    Laura Post had them in her custody. They were supposed to be in the joint custody of both of them, and Mrs. O'Conor was to have access to them and she did.    She

said if either of them died the other would go on; whichever survived would have a roof over her head. It was a great thing to have a roof over them and be provided for. Taxes were small at that time. She said that she had given these securities to them so that they would have them for the purpose of maintaining the house and keeping a roof over their heads, and if either one died the other one would have a roof. So long as either one lived they would have a house. Q. When did Mrs. Buchanan make those statements? A. She made them before and after I was married. I cannot tell you the exact date or time. It was frequent. She did that before and after I was married. Q. How long before she died did you hear her say that? A. I could not tell you exactly. Q. Did she make those statements at any time near her death? A. Yes, I think so."

It may be noted here that each of these witnesses is of most mature years and that each testified as to happenings of forty-six years ago. The cross-examination of these witnesses disclosed nothing that is helpful in deciding the question at issue. The sole evidence presented on the part of the Laura J. Post estate is a copy of the will of Elizabeth C. Buchanan, deceased, which was admitted to probate by this court in June, 1893. Inadvertently this will was not offered in evidence but only marked for identification, application having been made by petitioner in his brief — the instrument will be deemed to have been received and marked in evidence. The representatives of said estate point to the provisions of said will leaving testatrix's real and personal property to said nieces without any language establishing a *joint* gift, as evidence of the disposition of said aunt in the matter of distributing her property. The provision in question is as follows: "All my estate both real and personal and wheresoever situate of which I shall die seized and possessed or be in any manner soever entitled to I give to my sister Laura Taylor, widow, to her use for and during the term of her natural life and upon and immediately after the death of my said sister I give devise will and bequeath all my said estate, both real and personal wherever situate and of which I shall die seized possessed or entitled to in any manner soever, to my nieces Laura Josephine Post and Maria Jephson O'Conor to them and their heirs forever absolutely and in fee."

No further evidence was offered by the representatives of the Laura J. Post estate. Upon this brief record the respondent seeks a ruling that there was a gift made in 1881 *jointly* to the nieces with survivorship in Mrs. O'Conor upon the death of her sister in 1927; and the petitioner seeks a determination that there was a gift and that it was to the nieces as tenants in *common* with no right of sur-

vivorship in Mrs. O'Conor upon the death of her sister. While it is true that the petitioner concedes that there was a gift made to both nieces, he bases his claim to one-half of the property in question principally upon the provision in Mrs. Buchanan's will above quoted. The problem presented is somewhat clarified by determining upon whom lies the burden of proof. The burden of proving that the gift was made to the nieces *jointly* with survivorship in Mrs. O'Conor is upon the latter. The statutes of this State favor a tenancy in common as against a joint tenancy where a gift of property is made to two or more persons. Section 66 of the Real Property Law reads as follows: " Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy; but every estate, vested in executors or trustees as such, shall be held by them in joint tenancy. This section shall apply as well to estates already created or vested as to estates hereafter granted or devised." The rule laid down in this statute has been generally applied with equal force to personal property. (*Brosnan* v. *Gaffney*, 209 App. Div. 430; *Matter of Kimberly*, 150 N. Y. 90; *Matter of Blumenthal*, 236 id. 448; *Overheiser* v. *Lackey*, 207 id. 229; *Matter of Kaupper*, 141 App. Div. 54; affd., 201 N. Y. 534.) I hold that the respondent has failed to sustain the burden of proof as above stated. The sole testimony offered by her is that given by her, a directly interested party, and her husband, also interested in the issue presented herein. (*Matter of McMillan*, 218 N. Y. 64, 68.) While their honesty is not questioned, their interest in the outcome of this trial must be conceded and the accuracy of their memory in the recalling of exact language used in the first and most important instance, forty-six years ago is not established by the record in this trial. Assuming for the sake of argument that the memory of respondent and her husband, respectively, was dependable and accurate, we cannot overlook the fact that Mrs. Buchanan, a lay person, would ordinarily not be expected to be versed in the legal meaning of the language she is said to have used. It has been held that even the use of the term " jointly " in a bequest to two children where the will was drawn by a layman did not vest the property in them as joint tenants but as tenants in common. (*Overheiser* v. *Lackey, supra.*) Thus, the queries would still remain: (1) What did Mrs. Buchanan mean when she used the terms credited to her, and (2) did she have in mind a *"joint"* ownership with all that that term implies legally? Moreover the weight to be given their testimony must be considered (a) in the light of the fact that decedent presumably felt that she had her own right and interest in the property when she appropriated $5,000 to her own use, and (b) in the face of the provision made by

Mrs. Buchanan in her will giving all her property, real and personal, to said nieces, without a word to indicate that she intended the devise and bequest to be to them jointly. Finally, while it is true that their testimony is not contradicted by any evidence except as above set forth, their testimony stands alone and without support in any form, and it does not carry conviction to the mind of the court. The proof of the gift having failed upon the part of the respondent, there is a ready solution to the problem at hand in the provision of the Buchanan will above set forth. The personal property as well as the real estate of that testatrix was disposed of by that will and devised and bequeathed to Laura J. Post and Maria J. O'Conor. Therefore, the securities which are the subject of this discovery proceeding are the property of petitioner and respondent in equal shares. Submit order on notice accordingly.