EMPLOYERS-COMMERCIAL UNION INSURANCE COMPANIES OF AMERICA, Appellant, *v.* ROBERT BUONOMO, Doing Business as FOUNTAINBLEU COIFFURES, et al., Respondents.

Fourth Department, April 13, 1973.

*Bayer & Dupee* (*Jon Charles Dupee* of counsel), for appellant.

*Chikovsky & Snyder* (*Leonard A. Snyder* of counsel), for respondents.

DEL VECCHIO, J. P. This appeal by an insurer presents the question whether the insurer's disclaimer under a beauty shop malpractice, products and premises liability policy, based on the insured's failure to comply with the condition of the policy requiring co-operation, is valid. The trial court has held that it is not, and that the plaintiff insurer is bound to defend the defendant Buonomo, doing business as Fountainbleu Coiffures, against the claim of defendants Dettenmayer, arising out of an occurrence at the premises of Buonomo on October 26, 1968.

The Dettenmayers' action against Buonomo seeks damages for personal injuries sustained by the wife and derivative damages of the husband resulting from alleged negligence of Buonomo in the preparation of a bleaching solution for use on the wife's hair while she was a customer at Buonomo's beauty shop.

The lack of co-operation urged by the insurer consisted of Buonomo's statements that he would not attend an examination before trial or the trial of the Dettenmayer claim, and of false statements made to a claims investigator who interviewed the insured after the incident which gave rise to the claim.

With regard to the refusals to attend, the record establishes the following:

After Mrs. Dettenmayer had sustained head burns following the application of a bleaching solution at Buonomo's place of business in October, 1968, and the incident had been reported to Buonomo's insurance agent, who notified the insurer, the company conducted an investigation through its claims investigator, who interviewed both Mrs. Dettenmayer and Buonomo. When the Dettenmayers commenced their action against Buonomo in February, 1970, the insurer retained a law firm to represent Buonomo and on March 17, 1970, after a notice of appearance and answer had been interposed, Mr. Palermo, a member of the firm, wrote to Buonomo notifying him that an examination before trial in the personal injury action had been scheduled for May 5, 1970. The following day Buonomo telephoned Palermo inquiring "what the letter was all about". After the attorney had explained what an examination before trial consisted of and what its purpose was, Buonomo, by his own testimony, informed Palermo that he "would not attend the examination before trial" and "would not attend the trial of the action". Palermo advised him what would be the consequence of Buonomo's not attending the examination before trial, that if he did not co-operate it would be grounds for disclaimer and "he might end up with no insurance", and he asked Buonomo to be at the attorney's office a half-hour before the scheduled examination before trial. Despite this explanation and warning, some three weeks later on April 7, 1970, Buonomo repeated his refusal to appear at the examination before trial, this time categorically informing the insurance company's investigator that he "was not going to go to any examination before trial" " or attend the trial of the action".

After attorney Palermo had been advised of this conversation, on April 16, 1970 he wrote a letter to Buonomo indicating that he had been informed of Buonomo's refusals on April 7 and requesting him to advise Palermo by return mail whether he intended to appear for the scheduled examination before trial on May 5. No response to this letter was received. The insurer thereupon wrote to Buonomo on April 23 informing him that it would no longer afford a defense in the action, and Palermo,

having been advised of this step, returned the pleadings in the Dettenmayer action together with an executed stipulation of substitution of attorneys to Buonomo.

The false statements made by the insured to the claims investigator related to the number of free treatments rendered to Mrs. Dettenmayer by Buonomo after the occurrence on October 26, 1968. In the course of the investigation undertaken by the company after it had received notice of the event, both Buonomo and Mrs. Dettenmayer gave written statements to the investigator in December, 1968 and January, 1969 that Buonomo had been giving treatments to Mrs. Dettenmayer in an effort to alleviate her condition. In a subsequent written statement given to the investigator in April, 1970 Buonomo declared that he had given her " many free treatments " valued at " a good $500 ", for which he had requested reimbursement from his insurer. When questioned about these statements on the trial of the present action however, both Mrs. Dettenmayer and Buonomo testified that she had received only one free treatment and Buonomo admitted that his statement to the insurance company investigator that he had invested $500 in treatments for her was not true.

In addition to the foregoing conduct by the insured which was substantially found by the trial court, the court also found that the insured told attorney Palermo that he wanted the (Dettenmayer) matter settled, that he told Mrs. Dettenmayer to sue him and to employ Buonomo's attorney to handle the claim (which the Dettenmayers did), and that he was not entirely candid concerning the revelation to the insurer of the facts surrounding the hiring of the Dettenmayer attorney.

Viewing the foregoing conduct by the insured, which was found by the trial court and supported by the record, we are unable to agree with the trial court's conclusion that " It is difficult to see, however, where defendant Buonomo's conduct amounted to a lack of cooperation in a material respect."

There is no question that the burden of establishing lack of co-operation is on the insurer, who would assert it as an excuse for its own nonperformance under the insurance contract. The burden is " a heavy one indeed." (*Thrasher* v. *United States Liab. Ins. Co.*, 19 N Y 2d 159, 168). We think, however, that here the burden has been met by the proof of the insured's unequivocal, steadfast, and repeated announced refusal to attend the scheduled examination before trial and the trial itself of the Dettenmayer action. " The condition of the policy requiring co-operation on the part of the assured in the defense of the action brought against him by the injured party is one of

great importance. Without the presence of the assured and his aid in preparing the case for trial, the insurance company is handicapped and such lack of co-operation may result in making the action incapable of defense '' (*Schoenfeld* v. *New Jersey Fid. & Plate Glass Ins. Co.*, 203 App. Div. 796, 801). Here, without Buonomo's presence at the examination before trial the attorneys engaged by the insurer would be seriously hampered in their investigation and the preparation of a defense to the personal injury action. Consequently, his refusals amounted to a lack of co-operation in a material respect.

The false statements made to the claims investigator concerning treatments rendered to Mrs. Dettenmayer (relating only to events subsequent to the occurrence on which liability of Buonomo rested rather than to the occurrence itself), as well as his advice to Mrs. Dettenmayer to bring suit against him and his recommendation of legal counsel, may not be sufficient in and of themselves to constitute lack of co-operation. However, taken in conjunction with his persistent refusal to attend the examination before trial and the trial of the Dettenmayer's action, they serve to characterize his attitude as one '' of willful and avowed obstruction '' which, when evidenced by an insured, justifies the insurer in electing to treat the policy at an end without proof of prejudice from the failure to co-operate (*Coleman* v. *New Amsterdam Cas. Co.*, 247 N. Y. 271, 276).

We find no merit in respondents' argument that there has been no lack of co-operation by the insured because, by canceling the examination before trial after his two statements that he would not attend and his failure even to respond to a final letter inquiry as to his intention, the attorneys employed by his insurer denied him the possibility of fulfilling his obligation to co-operate in defense of the action. As was said in *Ga Nun* v. *Palmer* (202 N. Y. 483, 490) quoting from *Hochster* v. *De la Tour* (2 Ellis & Blackburn 678) '' ' It seems strange that the defendant, after renouncing the contract, and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion, and that an opportunity is not left to him of changing his mind.' '' Having been twice informed by the insured that he would not appear, the attorneys were not obliged actually to convene the taking of the deposition, at the inconvenience of the parties and attorneys on the other side, before the insured's refusals could be either believed or relied on.

The suggestion that there should have been a subpoena issued or an order sought to compel Buonomo's attendance introduces

the concept of compulsion — which is the antithesis of co-operation and which, by its very need, negates the co-operation required of the insured by the policy. Further, the question is posed, by whom might the subpoena or order be issued or sought? The defense attorneys are scarcely in a position to compel the attendance of their own party client, and the insurance company, as a nonparty, lacks such standing; for the insured's nonattendance the company has a full and adequate remedy — disclaimer. Compulsory processes are tools in the hand of the opposition.

Finally, the case of *Gutnick* v. *Long Island Ins. Co.* (54 Misc 2d 963) relied on heavily by respondents, is distinguishable. That case involved an attempted disclaimer of insurance liability for a motor vehicle accident in which the paramount right of an innocent accident victim to insurance protection, reflected in the compulsory motor vehicle financial security statute, is present (*Wallace* v. *Universal Ins. Co.*, 18 A D 2d 121, affd. on opn. of Appellate Division 13 N Y 2d 978). In such cases it has been recognized that " the defense [of lack of co-operation] frustrates the policy of this State that innocent victims of motor vehicle accidents be recompensed for the injuries inflicted upon them " (*Thrasher* v. *United States Liab. Ins. Co.*, *supra*, p. 168). We know of no such public policy with regard to customers of beauty shops, as to which no compulsory liability insurance requirement yet exists. Accordingly, we are not prepared to negate a clause in the contract between the parties and as a matter of public policy to override a valid defense of failure of co-operation when such failure is established by the record.

The judgment should be reversed and judgment entered declaring that defendant Buonomo has breached the co-operation clause of the policy issued to him by plaintiff and that, by reason of such breach, plaintiff is not obligated to defend Buonomo and is not liable for any damages which may be awarded against him in the action by defendants Dettenmayer.

CARDAMONE, J. (dissenting). The judgment of the trial court directing the plaintiff insurance company to provide a defense for the defendant should be affirmed. The insurer's heavy burden of proving lack of co-operation by the insured has not been met in this case. The insurer has failed to demonstrate: (1) that it acted diligently in seeking to bring about the insured's co-operation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's co-operation, and (3) that the attitude of the insured was one of " willful and avowed obstruction " (*Thrasher* v. *United States Liab. Ins. Co.*, 19 N Y 2d 159). The record reveals that the defendant did not

know what an examination before trial was about, that he was nervous, and he was not made aware of the effect on him of his failure to attend, since he was only told that "he *might* end up with no insurance" (emphasis supplied) if he failed to co-operate. Further, the defendant was never actually given an opportunity to attend and participate at an examination before trial (which he could have decided to do up until the last minute) because it was canceled by the appellant insurer. There was no further hearing scheduled, nor was there a trial. Under these circumstances, the defendant's attitude cannot be considered "willful and avowed obstruction." A breach of the insured's co-operation clause must be substantial and material to form the basis for a disclaimer (31 N. Y. Jur., Insurance, §§ 1337, 1339).

It should be further observed that liability insurance is intended not only to indemnify the assured but also to protect members of the public who may be injured through negligence (*Pennsylvania Threshermen & Farmers' Mut. Cas. Co.* v. *Owens*, 238 F. 2d 549). I agree with the trial court that the insured's lack of understanding should have been recognized by the insurer which, in the trial court's view, did not have a right to disclaim in reliance on an unanswered letter and the original personal interview without making a second attempt to interview the insured personally to make certain that he fully understood his situation. The determination of the trial court that the insurer's disclaimer was invalid is not, as the majority concludes, against the weight of the evidence.

WITMER, MOULE and SIMONS, JJ., concur with DEL VECCHIO, J. P.; CARDAMONE, J., dissents and votes to affirm in opinion.

Judgment reversed on the law and facts without costs and judgment entered in favor of appellant in accordance with opinion by DEL VECCHIO, J. P.